CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO. *v.* SCOTT.

Opinion delivered March 20, 1916.

RAILROADS—INJURY TO EMPLOYEE—DUTY TO MAINTAIN LOOKOUT—COLLISION.—Deceased was a brakeman on a train of the F. Rd. Company, and received fatal injuries when the engine upon which he was riding collided with a moving engine of the appellant railway company. Deceased's administratrix sued both companies but

elected to proceed against the appellant alone. *Held*, the case was covered by the lookout statute (Acts 1911, page 275), and that the appellant company would be liable, it appearing that the operatives of its engine failed to maintain the lookout for danger required by the statute, and that the accident could have been averted if a proper lookout had been kept.

Appeal from Crittenden Circuit Court, First Division; *J. F. Gautney*, Judge; affirmed.

*Thos. S. Buzbee* and *H. T. Harrison,* for appellant.

1. The proof was not sufficient to show negligence on part of defendant.

2. Defendant's negligence was not the proximate cause. 66 Ark. 68; 87 *Id.* 576; 51 L. R. A. (N. S.) 892; 95 U. S. 439; 40 Ark. 322; 45 S. E. 886; 62 Ark. 170; 76 *Id.* 13.

3. It was error to give instruction No. 3. It entirely ignores the question of deceased's negligence. Also in giving No. 5. It is abstract. 111 Ark. 135.

It was error to refuse to give defendant's request No. "D." 98 Ark. 17; 96 *Id.* 206. Also in refusing "A." and No. 2. 36 Ark. 377; 46 *Id.* 522; 7 L. R. A. (N. S.) 132; 63 Ark. 489.

*Covington & Grant,* for appellee.

1. The evidence is sufficient and defendants' negligence was the proximate cause. Plaintiff made out her case. 107 Ark. 431; 119 Ark. 36; 110 Ark. 169; 108 *Id.* 331; 107 *Id.* 170; 94 U. S. 474; 13 Cyc. 25, 6, 7. Failure to keep a proper lookout and exercise ordinary care was the proximate cause. 108 Ark. 331.

2. There was no negligence of deceased. The lookout statute makes the failure to keep the lookout or to exercise the ordinary care required the proximate cause. 108 Ark. 331; 109 *Id.* 241; 40 Fed. 632.

3. There is no error in the court's charge. 112 Ark. 405; 111 *Id.* 133; 93 Ark. 19; 111 *Id.* 133; 88 *Id.* 209; 111 *Id.* 281. The statute and 108 Ark. 331 settles this case.

SMITH, J. Appellee recovered judgment as administratrix of the estate of her husband to compensate the loss occasioned by his death, while engaged in the pursuit of his duties as a brakeman. The suit was brought against both the appellant railway company and the Frisco Railroad Company. It was alleged in the complaint that both of said railroads were operating trains through the town of Mansfield, Arkansas, where there were numerous sidetracks and switches used by them for switching cars and for other railroad purposes. That appellee's intestate, Ira M. Scott, was, on the 5th of May, 1914, employed by the Frisco Railroad Company, at which time the employees in charge of the train on which he was engaged as a brakeman and the trainmen operating one of the trains of the appellant company carelessly and negligently ran said trains together, and as a result of this collision the deceased received the injuries from which he died after suffering great pain.

Appellant filed a separate answer in which it denied specifically all the material allegations of the complaint, and plead affirmatively that the death of appellee's intestate was due to his own negligence.

At the conclusion of appellee's testimony the court, upon motion of the Frisco Railroad Company, ordered appellee to elect which of the defendants she would proceed against, whereupon she dismissed her suit against the Frisco and elected to proceed against the appellant company.

The evidence in support of the allegations of the complaint tended to establish the following facts: Appellant's railroad runs in a southwesterly direction through the town of Mansfield, while the Frisco tracks run almost due east and west, curving to the north in going from Mansfield to Jensen. The tracks of the two roads come together about twelve or fourteen hundred feet east of the Rock Island depot. Frisco trains from Jensen to Mansfield, after reaching Mansfield, leaves the main line Frisco track at a point near where the two roads come together, and back up to the depot, traveling over what is called the

run-around track. On the day in question the Frisco train had gone into the depot in the usual way, and the switch leading from the Frisco track to the run-around track had been left open with the red target or danger signal exposed, which fact gave notice that the track leading from the switch to the depot was being used at the time by a Frisco train. The Frisco train was composed of an engine, with a caboose attached to the rear, and a large refrigerator car coupled to the front, and after unloading some freight at the depot it started on its return to its own main track, where the car which was being pushed in front of the engine was to be placed upon the track for which it was intended by a flying switch. As this train was returning to its own track it encountered the Rock Island engine, which had "run over" the red target and come in upon the same track the Frisco train was on, and the trains collided with such force that Scott, who was riding on the pilot of the engine on the engineer's side, was killed, as was also another brakeman who was riding on the pilot on the opposite side of the engine. It was Scott's duty to have been on top of the car which was being pushed in front of the engine, or to have been on the ladder on the side of the car in a position to signal the engineer. As it was, there was no one on the Frisco train who could keep a lookout, and this train went blindly towards the switch where it would leave appellant's tracks for its own. The only possible excuse that could be offered for this negligence was the fact that the red target at the switch would apprise the trainmen in charge of appellant's engine of the presence of the Frisco train.

It was shown, however, on the part of appellant that it was not negligent in having come in upon the run-around track on which the collision occurred and that its train had a right to go upon this track notwithstanding the presence of the other train, provided the engine was kept under control, and the same duty rested upon the operatives of both trains to keep the engines under control. It was shown that by operating under control was

meant having that control of the engine which would enable the engineer to bring his engine or train to a stop within the range of his vision, that is, within the distance he could discern the presence of danger upon the track ahead of him, or in case his vision, for any cause, was obstructed, to have his engine under such control that he could stop it within the range of vision of the man whose duty it was to pass signals to him.

There are not many controverted questions of fact in the case, but among such questions are the relative speed of the trains, and the distance from each other when appellant's engineer saw, or could have seen, the other train, and the distance traveled by the Frisco train after the whistle on the Rock Island engine was blown as a warning of danger. While the witnesses do not agree as to the speed of the two trains it appears to be reasonably certain that the Frisco train was traveling faster than the Rock Island train. Without setting out this evidence in detail it may be said that it is sufficient to support a finding that, if the employees of either company whose duty it was to keep the lookout had performed that duty, the unfortunate collision would not have occurred. The evidence on appellant's behalf is to the effect that its engineer was keeping a lookout, that he blew a shrill blast of the whistle, and that he did this as soon as he realized the impending danger, and that he had applied his air-brake and had just reversed the engine when the impact came.

It is urged that appellant's engineer could not have prevented the collision because of the blind and heedless manner in which the Frisco train was backing up the track and that there was no time during the events leading up to the collision and until the occurence of the collision itself when the deceased could not by the exercise of care, have averted the fatal consequence to himself either by giving appropriate signals to his engineer or by jumping off his engine. Appellant argues from this assumption that the case should have been submitted on the question only of whose negligence was the proximate

cause of the collision.   This idea was embraced in an instruction which reads as follows:

"2.   If you find from the evidence in this case that the collision in question was the result of the joint concurring negligence of the operatives in charge of the Rock Island engine and of plaintiff's intestate, Ira M. Scott, it is your duty to return a verdict for the defendant."

Learned counsel for appellant review a number of cases which announce a rule that would require the giving of the instruction set out above and which would call for the reversal and dismissal of the case except for the lookout statute, enacted by the General Assembly of this State, May 26, 1911, (Acts 1911, p. 275).

The theory of the court below was that this statute was applicable and controlled the rule of liability under the facts of this case, and the correctness of that view presents the real question in the case.

We have considered this statute in a number of recent cases, and that the trial court correctly interpreted these decisions is shown by instruction numbered 3 which was given over appellant's objection, and which reads as follows:

"3.   If you find from a preponderance of the evidence that plaintiff's intestate was upon a train which was being operated upon the railway, and that the agents and servants of defendant company in charge of its train, whose duty it was to keep a constant lookout for persons and property upon the track, saw the train upon which plaintiff's intestate then was, and the perilous position thereof in time to have avoided colliding therewith by the exercise of ordinary care, or that said agents and servants of defendant, by keeping a constant lookout, could have seen the train upon which the plaintiff was, and discovered the the perilous position thereof in time to have avoided colliding therewith by the exercise of ordinary care, and failed to exercise such ordinary care to protect plaintiff's intestate from danger and injury, then you will find for plaintiff."

When we have approved this instruction as applied to the facts of this case we have practically decided the case, and we do approve it. Prior to this lookout statute the law was that, notwithstanding a railroad company was guilty of negligence in the operation of its trains which caused the injury, there could be no recovery if the person injured was guilty of negligence contributing to his injury, unless the peril of this negligent person was discovered in time to avoid injuring him by thereafter exercising ordinary care for that purpose. But this lookout statute worked a radical change in the law. Indeed, it was enacted for the purpose of making railroad companies liable where, notwithstanding the contributory negligence of the person injured, the injury could have been averted had a lookout been kept, and it is made immaterial whether the operatives of the train know of the person's presence and danger or not, provided the circumstances are shown to be such that the injury could have been avoided by the exercise of ordinary care had a lookout been kept. A lookout here would have revealed that the Frisco crew was guilty of the negligence of which appellant complains and also the peril and danger impending. It is true deceased could have gotten off the engine if he had known of his danger, and it may be true he would not have been endangered had he been at his post of duty to communicate appropriate signals to the engineer; but the keeping of a lookout on appellant's part would have revealed to the Rock Island train crew the impending collision which the negligence of the Frisco crew made probable, and we think the jury was warranted in finding that this collision would have been avoided had the Rock Island trainmen performed their duty by keeping a proper lookout.

Finding no prejudicial error the judgment is affirmed.