LUSK *et al.*, RECEIVERS, ST. LOUIS & S. F. RD. CO. *v.* OSBORN.

Opinion delivered January 29, 1917.

1. REMOVAL OF CAUSES—FEDERAL EMPLOYER'S LIABILITY ACT.—A cause may not be removed to the Federal Court, when brought under the Federal Employer's Liability Act, where the action is for personal injuries received by an employee of a railway company, a foreign corporation, and upon a train engaged in interstate commerce.

2. NEGLIGENCE—LIABILITY OF FELLOW EMPLOYEE.—Where two servants are employed by the same master, the one may be liable to the other in damages for his negligent act which causes the injury to the fellow-servant.

3. MASTER AND SERVANT—INJURY TO SERVANT BY NEGLIGENT ACT OF FELLOW-SERVANT—JOINDER OF ACTIONS.—Where an employee has been injured by the negligence of a fellow-servant, he may bring an action against both the master and his fellow-servant.

4. MASTER AND SERVANT—PERSONAL INJURY TO EMPLOYEE ON INTERSTATE TRAIN—DEFENDANT A NON-RESIDENT CORPORATION—JOINDER OF ACTION AGAINST FIREMAN AND ENGINEER—REMOVAL.—Plaintiff's intestate was a brakeman working on a freight train engaged in interstate commerce, and operated by the receivers of the railway company, who were non-residents, and was injured by the operation of the train. Plaintiff brought an action against the receivers for damages, and in a second paragraph in his complaint sued both the receivers, and the engineer and fireman who were operating the train, asking judgment against them jointly. Defendant receivers asked a removal to the Federal Court, setting out that no cause of action was stated against the engineer and fireman, and stating that they were fraudulently joined in orders to prevent a removal. *Held*, the engineer and fireman were not improperly joined, and that the court properly refused to order a removal.

5. MASTER AND SERVANT—INJURY TO RAILWAY BRAKEMAN.—Plaintiff's intestate was "swing" brakeman on a freight train, charged with the duty of determining when it was proper for the train to proceed; at the time of the accident he was not in a position to see ahead and the duty to signal the engineer to move the train fell upon the rear brakeman, who did give the signal. A collision resulted. *Held*, it was a

question for the jury whether plaintiff's intestate was guilty of any negligence which would bar a recovery.

6. MASTER AND SERVANT—INJURY—INTERPRETATION OF RULES.— Plaintiff's intestate was injured while riding on the pilot of an engine doing switching, the engine being provided with a place for employees to stand when engaged in switching and yard work. *Held*, a rule prohibiting employees from riding on engine pilots had no application to engines engaged in switching and yard work.

7. MASTER AND SERVANT—RAILWAY BRAKEMAN—CONTRIBUTORY NEGLIGENCE.—Plaintiff's intestate, a brakeman, was riding on the pilot of the engine, and behind a box car; he was charged with directing the operation of the train, and sustained fatal injuries when a collision with an approaching train occurred. *Held*, it was for the jury to determine whether the act of riding on the pilot behind the box car constituted an act of negligence, which was the sole cause of the injury, barring a recovery.

8. CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.—In an action for damages resulting from an accident which caused the death of plaintiff's intestate, the burden is upon the defendant to establish contributory negligence on the part of plaintiff's intestate.

9. TRIAL—PERSONAL INJURY ACTION—ARGUMENT CONCERNING VIOLATION OF INAPPLICABLE RULE.—Argument of counsel is not improper which refers to the practiced violation of an alleged rule of the defendant in a personal injury action, where the rule is inapplicable to the facts in the case, and was not violated.

10. TRIAL—ARGUMENT OF COUNSEL—LIMITATIONS.—An attorney may argue a case in his own way provided he does not misstate the testimony or undertake to state facts which are not in the record, or indulge in other comments which unfairly prejudice the rights of his adversary, and a judgment will not be reversed merely because counsel's argument falls without the range of the proprieties.

11. DAMAGES—PERSONAL INJURY ACTION—AMOUNT.—Plaintiff's intestate, a railway brakeman, was killed by the negligent operation of a train. Suit was brought under the Federal Employer's Liability Act; *held*, considering the testimony with respect to the habits and earning capacity of the deceased, and the average amount of his contributions to those who are designated as the beneficiaries under the Federal statute, that a verdict for $15,000 was not excessive.

Appeal from Sebastian Circuit Court, Greenwood District; *Paul Little*, Judge; affirmed.

*W. F. Evans* and *B. R. Davidson*, for appellants.

1. The facts of this case were recently before this court. 123 Ark. 94; 184 S. W. 65.

There were two counts in the complaint, one alleging a cause of action under the Employer's Liability Act, and the second under the State statute. The cause was removable to the Federal Court. 229 Fed. 319; 220 *Id.* 731; 203 *Id.* 1021; 167 *Id.* 675. The filing of the petition and bond deprived the court of jurisdiction. 50 Ark. 388; 87 *Id.* 136; 75 *Id.* 116; 81 Fed. 518; 81 *Id.* 977; 176 *Id.* 872; 183 *Id.* 133; 204 U. S. 176; 215 *Id.* 437.

2. The peremptory instruction requested should have been given. The conductor was absent and Howle had charge of the crew; he was riding on the pilot in violation of the rules. 156 Fed. 234; 95 U. S. 439; 141 Fed. 919; 87 S. W. 163; 156 Fed. 234; 41 Ark. 542; 40 *Id.* 298; 70 *Id.* 603. He was guilty of recklessness and can not recover. 18 Fed. 229; 136 *Id.* 164; 141 *Id.* 919; 118 *Id.* 223; 156 *Id.* 234; 95 U. S. 439; 163 *Id.* 93.

3. The violation of the rules is negligence *per se.* 84 Ark. 377; 85 *Id.* 237; 60 Fed. 370; 63 *Id.* 228; 118 *Id.* 223; 157 *Id.* 347.

4. No act of negligence is shown on behalf of the company. His own conduct was the proximate cause. 63 Ark. 177; 50 Fed. 725; 63 *Id.* 228; 128 *Id.* 529; 57 *Id.* 921.

5. He assumed the risk under the liability act. 141 Fed. 913; Adv. Sheets U. S. Sup. Ct. 588, May 22, 1916; 144 Fed. 668; 122 U. S. 189; 233 *Id.* 492; 239 *Id.* 595; 58 Ark. 234; 239 U. S. 576.

6. The concluding argument of counsel was objectionable and prejudicial. 61 Ark. 130; 70 *Id.* 179, 305; 71 *Id.* 415; 72 *Id.* 461; 75 *Id.* 577; 77 *Id.* 238; 81 *Id.* 87; 95 *Id.* 233.

7. The damages are excessive. 172 Fed. 684; 26 *Id.* 22; 40 *Id.* 95; 138 *Id.* 867.

8. The instructions given for plaintiff are clearly erroneous. 27 S. W. 622; 19 A. & E. R. R. Cases 261; 49 Pac. 83; 45 *Id.* 581; 57 Atl. 529. The instructions refused clearly state the law. The lookout statute has no application to the protection of employees operating a train. 77 Ark. 1-10; cases *supra.* The evidence does not warrant a recovery.

*Covington & Grant*, for appellee.

1. The first count is based entirely upon the Federal act and an action based upon that act can not be removed to the Federal Court. 112 Ark. 305; 238 U. S. 599. The fact that there were two counts, one based on the Federal act and the other on the "State statute," does not make the case removable. There was no diverse citizenship. 232 U. S. 146. Here was a case of joint operation, control and liability. Plaintiff could sue one, or all. 62 Ark. 354; 6 Thomps. Negl., p. 475, § 7437; 33 Sup. Ct. Rep. 250.

The case was not removable because the receivers were appointed by a Federal Court. 25 Stat. at Large, 436; 177 U. S. 584; 151 *Id*. 81; 145 *Id*. 593; 141 *Id*. 327; 93 Fed. 52; 179 U. S. 335.

2. The court properly refused the peremptory instruction. The evidence does not show that the death of Howle was caused solely by his own negligence, or that he assumed the risk. A recovery could be had if there was any negligence on the part of defendants or servants that contributed in whole or in part, to the injury. Negligence was shown by the testimony and the case properly submitted to a jury. 107 Ark. 170; 97 *Id*. 422; 99 *Id*. 69; 90 *Id*. 131; 93 *Id*. 631; 232 U. S. 248.

3. Howle was not guilty of contributory negligence, nor recklessness in riding upon the pilot in violation of the rules. But if guilty of contributory negligence only, this does not preclude a recovery under the Federal act. 156 Fed. 234; 128 *Id*. 536; 114 *Id*. 870; 95 U. S. 439; 237 *Id*. 499; 229 *Id*. 114; 223 *Id*. 1; 91 Ark. 86; 88 *Id*. 20; 187 S. W. 920.

4. Nor did he assume the risk. 197 Fed. 94; 207 *Id*. 281; 235 U. S. 375; 233 *Id*. 572; 238 *Id*. 507.

5. If the remarks of counsel were improper, they were not prejudicial. 74 Ark. 256; 93 *Id*. 564; 100 *Id*. 437; 104 *Id*. 340; 95 *Id*. 238.

6. The verdict is not excessive. 115 Ark. 483; 237 U. S. 648.

7. The jury were not misled by the instructions. Similar ones have been approved by the courts. 118

Ga. 535; 110 *Id.* 309; 49 Law Rep. 231. Negligence was shown. Counsel desiring instructions on points not covered should request them. 115 Ark. 101; 117 *Id.* 579; 70 *Id.* 136; 95 *Id.* 593; 78 *Id.* 455; 75 *Id.* 251. Instruction No. 5 given is a literal copy from 104 Ark. 340. The same rule is announced in 238 U. S. 507; 228 *Id.* 434. Tested by the rule in 197 Fed. 94 and 207 *Id.* 281 and 235 U. S. 376, there was no assumed risk. 207 Fed. 281, etc.; 96 Ark. 387.

As to the lookout statute see *Seaboard Air Line* v. *Beauregard*, adv. ops., 1915, 126.

The law and the evidence justify the verdict and the judgment should be affirmed.

McCULLOCH, C. J. The plaintiff's intestate, T. M. Howle, was a brakeman serving on a freight train operated by the receivers of the St. Louis & San Francisco Railroad Company, a foreign corporation, and received injuries, which proved fatal, while assisting in the operation of a train engaged in interstate commerce. This is an action instituted by the administrator under the Federal Employer's Liability Act to recover damages for the benefit of the next of kin. The injury occurred on May 5, 1914. In the second paragraph of the complaint, charges of negligence were made against the receivers of the company. and also against the engineer and fireman who were engaged in operating the train, and judgment is asked against them jointly.

The receivers filed a petition for removal of the cause to the Federal Court on the ground of diversity of citizenship of the plaintiff and those defendants, and also on the ground that defendants J. A. Campbell and I. N. Barton, respectively engineer and fireman, had been "fraudulently made defendants in this action to prevent a removal to the United States court." The trial court denied the petition for removal and refused to surrender jurisdiction, to which ruling exceptions were duly saved. Thereafter, the plaintiff dismissed the cause of action set forth in the second paragraph, and the case proceeded to trial upon the first paragraph,

seeking recovery under the Federal Employer's Liability
Act, and the trial resulted in a verdict in the plaintiff's
favor, assessing damages against the defendants in the
total sum of $15,000. An answer was filed presenting an
issue upon each of the allegations of the complaint.

The circumstances of the injury have already been
reviewed and set forth in detail by this court in an opin-
ion rendered in the case of *Chicago, R. I. & P. Ry. Co.* v.
*Scott,* 123 Ark. 94, but the facts necessary for a proper
understanding of the issues involved will be again set
forth. At the town of Mansfield, Arkansas, where the
injury occurred, the St. Louis & San Francisco Railroad
(commonly known as the Frisco) connects with the
line of the Chicago, Rock Island & Pacific Railway
Company, and the two companies maintain and use a
joint station. The Rock Island runs nearly east and
west through the town, and the Frisco comes in from the
north and curves toward the west. The connecting
point of the two roads is about 1,200 feet east of the
depot. The Frisco trains, in order to reach the depot,
leave the main line of that road at the point of connec-
nection with the Rock Island and back up to the depot
over what is called the "run-around track," which is
used by both roads for switching purposes. Howle, the
plaintiff's intestate, was swing or middle brakeman on
the freight train, and when his train came into Mans-
field, it was backed into the station over the track just
indicated, and the switch was left open, with the red
target as a danger signal exposed, thus giving notice
that the track was occupied by that train. The train
was stopped at the station, where freight was unloaded.
There was only a caboose attached to the engine in
the rear, but there was a box car of extra width, called
an automobile car, attached to the engine in front,
which was to be put on a side track before the train
pulled out on the return trip to Jensen, the other end
of the local run.

When the work of unloading was complete, and
the train was ready to proceed, Scott, the rear brake-
man, gave the signal to move forward, and the train

was started, and after it was moved seven or eight car-lengths, it collided with the Rock Island train which had come in from the west and entered upon this track regardless of the danger signal. The track curved to the left west of the station, so that the engineer could not have seen the approaching engine from his side of the cab, but there was evidence to the effect that the fireman could have seen the Rock Island train if he had been keeping a lookout. Howle had taken a place on the pilot of the engine and behind the automobile car, where he could not see forward, and Scott was either on the right-hand side of the pilot or hanging on to the end of the automobile car, and when the collision occurred, the automobile car was forced off of its trucks and telescoped the pilot of the engine, thus crushing both of the brakemen between the end of the car and the front of the engine. Howle's legs were mangled, one foot was caught in the box car, and he was dragged for some distance, and he suffered great pain before he died in the hospital.

There was introduced in evidence, the following rule of the company: "Employees are forbidden to ride on the pilot of any locomotive. Employees are forbidden to go between cars while coupling or uncoupling the cars." The contention of the defendants is that there was a violation of this rule which was the proximate cause of the injury and which operated as a defense, and also that the deceased assumed the risk by occupying a place of danger on the pilot. This phase of the case will be discussed later with reference to the assignments of error. The acts of negligence set forth in the complaint are: (1) That the fireman and engineer failed to keep a lookout as required by the rules of the company so as to discover the presence of the approaching Rock Island train, as they might have done; (2) that the defendants failed to adopt and enforce rules and regulations with respect to the movement and control of trains on the track used by both companies; (3) that the engineer failed to direct the fireman to keep a lookout as required by the rules; (4) that

"the defendants and their superintending officers, servants and employees," with knowledge of the presence of Howle in a position on the pilot of the engine where he could not see ahead, negligently failed to warn him of the approach of the Rock Island train; and (5) that the conductor, engineer and fireman "so handled and moved the train as to negligently and carelessly collide with the Rock Island train."

It is also alleged that if the proper lookout had been kept, as required by the rules of the company, or if the servants operating the train and directing the movement thereof had exercised ordinary care in the operation and movement of the train, or in warning deceased of the approach of the Rock Island train, the injury would not have occurred. There is another charge in the complaint, to which no testimony was introduced and which may be treated as having been abandoned at the trial. It is to the effect that the train dispatcher and conductor in charge of the train "negligently ordered and permitted the train upon which plaintiff's intestate was employed, to proceed from Mansfield to Huntington without warning the deceased or the engineer or fireman that the train of the Chicago, Rock Island & Pacific Railway Company was upon the track which defendants' train would have to pass over."

(1)    The first assignment of error argued before us is that which relates to the ruling of the court in refusing to surrender jurisdiction and to remove the cause into the Federal Court. The right of removal as to the cause of action stated in the first paragraph on the grounds of diversity of citizenship and the involvement of a Federal question, is settled by the language of the Federal act as already construed by this court, and by the Supreme Court of the United States. *Kansas City Southern Ry. Co.* v. *Leslie,* 112 Ark. 305, 238 U. S. 599. Counsel insist, however, on the right of removal as to the second paragraph, which is not based on the Federal statute, and the contention is that the right of removal is established by the allegations in the petition to the effect that the engineer and fireman were

joined as defendants for the fraudulent purpose of defeating removal.  Counsel rely on decisions of some of the Federal courts holding that where there are two counts or paragraphs in a complaint, one under the Federal statute, and the other under the common law or a State statute, the cause is removable on the grounds of diversity of citizenship.  *Flas* v. *Illinois Central R. R. Co.*, 229 Fed. 319; *Strother* v. *Union Pacific Ry. Co.*, 220 Fed. 731; *Patterson* v. *Bucknall Steamship Lines*, 203 Fed. 1021.

(2-3)  Without passing on that identical question, we can dispose of the present case by determining whether or not the petition states a case of fraudulent misjoinder for the purpose of defeating removal.  The whole of the allegation on that subject is that "no cause of action exists as against J. A. Campbell or I. N. Barton, or either of them, and they are fraudulently made defendants in this action to prevent removal to the United States court."  The second paragraph of the complaint contains the specific charge that the engineer and fireman were guilty of negligence in failing to keep a lookout, and that if such lookout had been kept, they could have discovered the other train in time to have avoided the collision.  This states a cause of action against the engineer and fireman, not under the lookout statute, but under the general principles of the law regulating the conduct of individuals co-operating together in the same work.  The lookout statute undertakes only to create responsibility on the part of the railway company and it had no application in the case of an injured employee who assists in the operation of the train; but independently of that statute or any other, a person is liable in damages for a negligent act of his own which causes injury to his fellow servant.  In such a case the failure to keep a lookout pursuant to the requirements of the statute may not constitute negligence as a matter of law, but it may justify a finding of negligence under the circumstances of a given case.  The charge of negligence in this respect therefore constitutes a cause of action against the em-

ployee who committed the negligent act, which may be joined with an action against the superior who is in law responsible for it.

(4)  Now, the petition does not attempt to traverse the allegations of the complaint, further than to state that "no cause of action exists against J. A. Campbell or I. N. Barton.", That constituted no denial of the material allegations of the complaint, for it neither denied the charge that those defendants were operating the engine or that they failed to exercise ordinary care in the operation thereof.  The case is expressly ruled on that point by the decision of the Supreme Court of the United States in *Chesapeake & Ohio Ry. Co.* v. *Cockrell*, 232 U. S. 146.  In discussing statements of the petition similar to those set forth in the petition in the present case, the court said:

"Putting out of view, as must be done, the epithets and mere legal conclusions in the petition for removal, it may have disclosed an absence of good faith on the part of the plaintiff in bringing the action at all, but it did not show a fraudulent joinder of the engineer and fireman.  With the allegation that they were operating the train which did the injury standing unchallenged, the showing amounted to nothing more than a traverse of the charges of negligence, with an added statement that they were falsely or recklessly made and could not be proved as to the engineer or fireman. As no negligent act or omission personal to the railway company was charged, and its liability, like that of the two employees, was, in effect, predicated upon the alleged negligence of the latter, the showing manifestly went to the merits of the action as an entirety and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants. Plainly, this was not such a showing as to engender or compel the conclusion that the two employees were wrongfully brought into a controversy which did not concern them."

(5)  It is next contended that the undisputed evidence shows that there is no liability under the Fed-

eral statute, and that the court erred in refusing to give a peremptory instruction in favor of the defendants. Several reasons are urged why the evidence shows affirmatively that there is no liability on the part of the defendants. In the first place it is urged that Howle had charge of the train crew and was directing and controlling the movements of the train, and that for that reason his own negligent omission to discover the presence of the approaching Rock Island train was the sole cause of the injury. The evidence shows that the swing brakeman (the position which Howle occupied in the service) controlled the movements of the train in the absence of the conductor, and that in this instance the conductor was temporarily absent at the time the signal was given for the train to move. The testimony on that subject is that the trainmen had been shown the orders for the movements of the train, but that at the particular time that the signal was given, the work of unloading was complete, the train was then ready to move according to orders, and the conductor was in the station but that he came out as the train moved and boarded the caboose.

Now, it is not proved in the case that Howle gave a specific direction to Scott, the rear brakeman, to give the signal at that time, or that he gave any orders at all. That is a mere inference, if it may be considered to be in the case at all. The witnesses all testify that Scott gave the signal and that it was customary for the rear brakeman to do so. We do not understand from the testimony that it was the duty of the swing brakeman to give the signal in the absence of the conductor or to be responsible for giving it at the proper time. The only evidence on that subject is that he was to control the movement of the train, that is, he was to determine when the train was to proceed, and that it was the duty of the other brakeman to give the signal and to look out ahead to see whether there were obstacles on the track ahead that would prevent the movement. The conductor himself might give the order to proceed while he was in some position in or about the train that

he was unable to discover whether or not there was
anything ahead to prevent, and it would be left to the
trainmen who started the movement by signal to look
ahead to discover whether or not there was anything
in view to create danger.   In other words, we under-
stand the testimony to be that the conductor, or in his
absence his substitute, the swing brakeman, was to
determine when the time had come for the train to pro-
ceed on its journey, and that the signal brakeman,
who was Scott, the rear brakeman, was under duty to
give the signal, which necessarily implied the duty,
when there were obstacles ahead of the engine, to de-
termine whether or not it was safe to proceed.   The
evidence establishes the fact that Howle was not in a
position to look ahead, and that duty was necessarily
entrusted to the other brakeman, who gave the signal.
It was, therefore, a question for the jury to determine
whether or not Howle himself was guilty of negligence
which barred the right of recovery or diminished the
sum to be recovered.

(6)   Again, it is urged that the evidence shows be-
yond dispute that Howle was riding on the pilot of the
engine in violation of the rules of the company, and that
for that reason there can be no recovery.   There was a
rule on the subject, which is hereinbefore quoted, but
the evidence warrants the inference that this rule was
not applicable to engines while engaged in switching,
and only applied to road engines while out on the road.
The witnesses testified that switch engines had a running
board in front and a place where men may sit down.   It
necessarily follows from that testimony that the rule was
not to be applicable to switch engines or to a road engine
while used in switching in the yards, for if the rule ex-
cludes a regular switch engine from its operation there
is no reason for applying it to a road engine while en-
gaged in similar service.   Rules of this kind must be
given a reasonable application, and when this one is
considered it is manifest that it was intended to prevent
unnecessary exposure by riding on the pilot of an en-

gine while out on the road, and not in the service of switching in the yards.

(7) It is argued that as the pilot of an engine is not intended for the use of passengers, or for employees to ride on, it is necessarily negligence for one to be found there. This might be true as a matter of law under some circumstances, but it does not necessarily follow that this view of the matter brings the case within the operation of the rule referred to, but leaves it as a question for the jury to determine whether or not the act of Howle in riding on the pilot constituted negligence. Counsel confidently rely on the decision of the Supreme Court of the United States in *Great Northern Ry. Co.* v. *Wiles*, 240 U. S. 444, in which it was held that the act of a brakeman in failing to flag an approaching train was the sole cause of the collision which caused his injury and that he could not recover. That case is entirely different, we think, from the present one, in that the act of the brakeman in failing to flag a train approaching in the rear was indeed the sole cause of the collision, whereas it was a question for the jury in the present case to determine whether or not the act of riding on the pilot behind the automobile car constituted an act of negligence which was the sole cause of the injury. We are of the opinion, therefore, that the court was correct in refusing to give the peremptory instruction and properly submitted the issues to the jury.

Error of the court is assigned in giving instruction No. 1, requested by the plaintiff, which reads as follows:

"If you find by a preponderance of the evidence that the train of the defendants Lusk, Biddle and Nixon, as receivers of the St. Louis & San Francisco Railroad Company, upon which the deceased was employed, collided with the train of the Chicago, Rock Island & Pacific Railway Company, and that such collision was caused by the negligence of the agents and employees of the defendants in failing to exercise ordinary care to prevent the same as set forth in the complaint and amendment thereto, and that the deceased Howle was

injured and killed in said collision, and that his injury and death was caused in whole or in part by the negligence of the agents and employees of the said defendants as stated in these instructions and as alleged in the complaint and amendment thereto, then your verdict should be for the plaintiff, unless he assumed the risk."

The objection urged against this instruction is that it permits the jury to find negligence on the part of the defendants, or their servants, in either of the particulars mentioned in the complaint irrespective of the absence of proof to sustain it. We do not think that this instruction was susceptible of that interpretation, for it was intended merely to submit generally the question of negligence on the part of the defendants, and was not directed toward any particular alleged act of negligence or necessarily to all of them.

The court gave instructions, at the instance of the defendants, withdrawing from the jury the consideration of the charges of negligence against the engineer or fireman with respect to keeping a lookout, and also charged the jury that there was no evidence sufficient to warrant a finding that either the engineer or the fireman knew of the position of the deceased in the place of danger. We think the instruction withdrawing the question of the fireman's negligence was more favorable to the defendants than they were entitled to, for there was sufficient evidence to justify a finding that the fireman was guilty of negligence in that respect. However, the defendants can not complain of a ruling which was too favorable to them. If the defendants desired the express exclusion of other charges of negligence from the consideration of the jury on the ground that there was no evidence to support the same, they ought to have made request therefor, and in the absence of such request they are not in position to complain, since it is found that the general instruction, No. 1, did not necessarily submit to the jury each and every charge of negligence in the complaint.

The instructions, when taken as a whole, submitted the case to the jury on the charge of negligence against

Scott in giving the signal to proceed when the Rock Island train was approaching on the same track, and this is the charge of negligence on which the verdict of the jury is manifestly based.

The objection to the third instruction is trivial, for the contention is that it permits a recovery by the plaintiff for the negligence of the intestate himself, but that is obviously not the meaning of the instruction.

(8)  Objection is also urged to the fifth instruction requested by the plaintiff, which reads as follows:

"The defendants contend that the deceased Howle was guilty of contributory negligence which contributed to the injury and death of the said deceased.  The law presumes that the deceased was in the exercise of ordinary care and caution for his own safety at the time of his alleged injury, and the burden of proving that he was guilty of contributory negligence is upon the defendants, unless it sufficiently appears from the evidence of the plaintiff.

"By contributory negligence is meant such a want of care on the part of the plaintiff's intestate, for his own safety, as an ordinarily prudent and careful person would have exercised under the circumstances existing at the time, and which caused or contributed to the injury sued for in this action."

The effect of this instruction was merely to place the burden of proof on the defendant to establish contributory negligence on the part of plaintiff's intestate, which was correct.  *Central Vermont Ry. Co.* v. *White*, 238 U. S. 507.

There are many other assignments of error in regard to rulings of the court in giving and refusing instructions, but we are unable to discover any merit in those assignments, and the grounds of objection thereto are not sufficient to call for a discussion.

(9-10)  It is earnestly insisted that the cause should be reversed because of alleged improper argument of one of the attorneys for the plaintiff, as shown by the following excerpt:  "You could go into Mansfield this afternoon and see some one riding on the pilot of

an engine before sundown." And also the following: "God speed the time when the railroad men of this country will change their views of swearing or attempting to swear out of court those who come in with a just and meritorious cause. May the time soon come, gentlemen, when men will give the real facts concerning a wreck of this magnitude and character, in which men have lost their lives, families have lost their support, children have lost their fathers and women their husbands. May the time come when they will tell the absolute truth about it."

The first statement of counsel relates to the question of the force of the rule forbidding employees from riding on the pilot of an engine. This was mere argument that the testimony warranted. the inference that the rule did not apply, and that trainmen were permitted to ride on engines while engaged in switching. We have already seen that there was evidence sufficient to justify the inference that the rule did not apply, and the argument was not, therefore, improper.

The second paragraph of the argument which is objected to was a method of presenting the conflicts in the testimony with respect to material facts in the case. There were sharp conflicts in the testimony, and counsel had the right to argue to the jury that some of the witnesses, who were all railroad men, had not told the truth. It was, of course, a style of argument which is not to be commended in any view of the matter, but we do not feel justified in reversing the judgment merely because the argument falls outside the range of proprieties. An attorney has the right to argue a case in his own way, provided he does not misstate the testimony or undertake to state facts which are not in the record, or indulge in other comments which unfairly prejudice the rights of his adversary. Our conclusion is that the argument was not prejudicial and does not call for a reversal of the judgment.

(11) Finally, it is contended that the amount of the verdict is not warranted by the testimony. Considering the testimony with respect to the habits and

earning capacity of the decedent, and the average amount of his contributions to those who are designated as the beneficiaries under the Federal statute, we are of the opinion that the verdict is not excessive.

The judgment is therefore affirmed.