[Civ. No. 4242. Third Appellate District.—February 16, 1931.]

HARRY H. QUALLS, Respondent, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

8

Robert Brennan, M. W. Reed, E. T. Lucey, Leo E. Sievert and H. K. Lockwood for Appellant.

Paul Blackwood for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment for the plaintiff rendered upon the verdict of a jury for damages for personal injuries sustained in the course of his employment as a brakeman. The action was maintained under the federal Employers' Liability Act (45 U. S. C. A., secs. 51–59).

The defendant owns and operates an interstate railroad system extending into California. Among its properties is a freight depot and yard consisting of side-tracks for the distribution of cars in the city of Los Angeles. The main track leading to the freight yard passes under an overhead bridge, past the depot, thence in a semicircle northerly to a switch communicating with side-tracks numbers six and seven. These tracks extend in a parallel course, and are separated just a sufficient distance to permit boxcars to pass. Northerly from this switch these side-tracks ascend a slight grade. The making up of trains and the distribution of cars in this freight yard was in charge of a crew employed for that particular purpose. J. D. Lodgson was foreman of this crew. W. H. Mooney had charge of the switch. It was his duty to see that cars which had been run upon a side-track were stationary before he gave the signal to kick other cars on to the siding. D. J. Gallagher was the front brakeman, whose duties required him to attend the switch-engine and relay all signals for the operation of the engine when the engineer was not in sight of the switch. The plaintiff, Qualls, was an able-bodied man, thirty-eight years of age. He had experienced twelve years' service as a switchman. Three and a half or four years of this period were spent in that capacity with the defendant railroad company at Los Angeles.

The accident which resulted in the injuries sustained by the plaintiff occurred June 17, 1926, about 5 o'clock in the afternoon. The atmosphere was clear. It was then per-

fectly light. The engine was coupled to the southerly end of a string of some twenty boxcars which the yard crew were then engaged in distributing upon the side-tracks. The switch was located at the sharpest point in the curve of the track, about one thousand feet from the overhead bridge. The plaintiff was out in the yard four or five hundred feet northerly from this switch, in the neighborhood of tracks numbers six and seven. It was his duty to catch the boxcars as they were uncoupled from the train and run on to the various side-tracks, ride them down the siding to the desired location and set their brakes.

He had performed this service with respect to one car which had been run on to siding number six and for two cars which were run on to the adjoining side-track number seven. During this operation the switch-engine with its train of cars was running back and forth beyond the switch to give the cars the necessary momentum to carry them to their desired location on the side-tracks. A string of three other cars was run on to siding number seven while the plaintiff was engaged in riding a single car up track number six. These three cars struck the two cars already stationed on track number seven, upon the nearest one of which the brake had been previously set. The cars were automatically coupled by means of the contact. The brake which had been previously firmly set by the plaintiff on one of these cars was evidently defective and failed to hold the five cars. This string of five cars began to slowly roll down the slight grade toward the switch. When the head car of this string reached a point about three hundred feet from the switch, the plaintiff observed the train to which the engine was attached, stationary, several car-lengths south of the switch. Out of precaution he motioned the switchman, Mooney, to hold the train. The plaintiff was not then in sight of the engine, which was around the curve, but he saw Gallagher, the front brakeman, relay the proper signal to the engineer. Assuming that the brake which he had set on the second car of this runaway string was defective, because it failed to hold the cars, he mounted the second car from the head toward the switch, for the purpose of setting the brake on that car. By the time he reached the running-board on top of the car, the head car had nearly reached the junction of the two side-tracks. In spite of his former

signals, he observed other cars from the freight train about to be switched on to side-track number six. It appeared to the plaintiff that a collision was inevitable. As the cars rolled by on to siding number six, the head car of the string upon which the plaintiff was riding struck or "sideswiped" them. The plaintiff said in this regard: "I got on the north end of the car. Just as I got on top of the car I saw the car ahead of the car I was on rear up as though it was going to turn over, and I thought the cars were going to turn over, and I jumped off. Q. What made the cars rear up? A. The cars coming in on (number) 6 side-swiped it. . . . I thought all the cars were going to turn over." The anticipated danger of the cars toppling over as a result of the collision was corroborated by other witnesses. Mr. Mooney, the switchman, testified: "Mr. Lodgson (the foreman) hollered to me and told me to look out, the car was turning over. . . . The first thing I knew, Lodgson said, look out, it is turning over. The car was leaning a little bit towards me." In the emergency, believing that the string of cars which he was riding would overturn, the plaintiff jumped to the ground. The bones of both heels were crushed. The tarsal and metatarsal bones of both feet were fractured, and his spine was seriously injured. There is evidence that the injuries to his feet will result in permanent ankylosis; that he may never be able to walk without crutches, and that certainly he cannot do so without great pain; that he will never be able to do heavy work requiring him to stand upon his feet. The spine, also, is permanently injured. There is a separation of the sacro-iliac joint, which will cause great pain and inconvenience and which is likely to be incurable. Dr. Edwards testified: "I think he will remain totally disabled."

The jury found a verdict in favor of the plaintiff for the sum of $20,000, for which sum a judgment was rendered. From this judgment the defendant has appealed.

It is contended the evidence will not support a finding of negligence on the part of the railroad company; that the proximate cause of plaintiff's injuries was not the negligence of the defendant; that plaintiff's injuries were due to his own contributory negligence; that he assumed the risk of his employment; that the court erred in refusing certain instructions which were offered by the defendant; that the

12

plaintiff is barred from recovering damages because his employment with the railroad company was obtained by means of fraud, in violation of the provisions of the federal Employers' Liability Act (45 U. S. C. A., secs. 51–59).

█ The evidence sustains the implied findings of negligence on the part of the defendant and its agents in supplying a freight-car with a defective brake, and in carelessly running a string of cars from the main line upon track number six so as to collide with the cars upon which the plaintiff rode which were rolling back down track number seven. Both of these acts concurred to proximately cause the collision which resulted in the injuries sustained by the plaintiff. On account of the defective brake, the five cars which were run up along track seven, rolled back to the switch, in spite of plaintiff's efforts to board them and set another brake. The switchman, Mooney, operated in plain view of this string of cars on track number seven. It was his duty to hold the train on the main track, and run no more cars upon these sidings until the last cars kicked up on number seven were stationary. Just before mounting these runaway cars, the plaintiff had signalled him to hold the train. This signal was relayed by the head brakeman to the engineer. Under such dangerous circumstances, the train was nevertheless backed up and other cars were shoved on to track number six just in time to cause the collision. These two acts of negligence combined to proximately cause the accident resulting in the plaintiff's injuries.

Section 2 of the federal Safety Appliance Act, title 45, U. S. Code Annotations (Railroads), page 59, sec. 11, provides in part: "It shall be unlawful for any common carrier subject to the provisions of this chapter to haul, or permit to be hauled or used on its line, any car . . . not. equipped with secure . . . and *efficient hand brakes.*"

█ It is the absolute duty of an interstate railroad company to equip and maintain efficient brakes so as to securely hold cars under ordinary circumstances. (*Chicago B. & Q. R. Co.* v. *United States*, 220 U. S. 559, 570 [56 L. Ed. 582, 31 Sup. Ct. Rep. 612, see, also, Rose's U. S. Notes]; *Norfolk & W. R. Co.* v. *United States*, 177 Fed. 623 [101 C. C. A. 249]; *Didinger* v. *Pennsylvania R. Co.*, 39 Fed. (2d) 798; *Altman* v. *Atlantic Coast Line R. Co.*, 18 Fed. (2d) 405.)

The evidence in the present case shows that the brake on the second car which was run on to track seven was securely set. The plaintiff testified in this regard: "I set the brake. I used my brake club to set it. I set it as tight as I could." Mr. Lodgson, the foreman, testified, "I saw him set that brake. The car was standing after he set the brake." Mr. Mooney, the switchman, said, "Qualls set the brake on that car and it stayed there." There was but a slight grade from the point where this car stood on track number seven southerly to the intersection with track number six near the switch. There is substantial evidence to indicate that a good brake should have firmly held this string of five cars. The plaintiff testified in this regard, "I know it had defective brakes on it. . . . If it had not been a defective brake it would have held them. . . . It happened to be a defective brake and let them roll back." Mr. Lodgson, the foreman, testified in this regard, "I have been a brakeman, switchman, for about 25 years. I know how brakes operate on cars. . . . When I kicked two cars in . . . on (track number) 7, and they came to a joint with that car on 7, I expected that to stop that car; hold those cars back. . . . If that brake had been efficient, had not been a defective brake on that car, . . . (it) would have been sufficient to hold those five cars on that slight grade there." Mr. Mooney also testified, "It should have held the three cars."

The question as to whether the acts of negligence complained of became the proximate cause of the injuries sustained is a problem for the determination of the jury. (*Milwaukee etc. R. Co.* v. *Kellogg,* 94 U. S. 469, 474 [24 L. Ed. 256, see, also, Rose's U. S. Notes]; *Erie R. Co.* v. *Schleenbaker,* 257 Fed. 667, 669 [168 C. C. A. 617].)

Indeed, it is the established rule of the federal courts, that when the negligence consists of a failure to comply with the Safety Appliance Act, the question as to the proximate cause of injury is thereby eliminated, and no longer furnishes a defense. (*Spokane & I. E. R. Co.* v. *Campbell,* 241 U. S. 497, 510 [60 L. Ed. 1125, 36 Sup. Ct. Rep. 683, 689]; *Philadelphia & R. R. Co.* v. *Auchenbach,* 16 Fed. (2d) 550, 551, *certiorari* denied, 273 U. S. 761 [71 L. Ed. 878, 47 Sup. Ct. Rep. 476]; *Payne* v. *Connor,* 274 Fed. 497.)

In the Spokane case, above cited, it is said: "It is too plain for argument that under this legislation the violation

of the Safety Appliance Act (45 U. S. C. A., sec. 1 et seq.)
need not be the sole efficient cause, in order that an action
may lie. The Circuit Court of Appeals (217 Fed. 518, 524
[133 C. C. A. 370]) held that the element of proximate cause
is eliminated where concurring acts of the employer and
employee contribute to the injury or death of the employee.
. . . Where, as in this case, plaintiff's contributory negli-
gence and defendant's violation of a provision of the Safety
Appliance Act are concurring proximate causes, it is plain
that the Employers' Liability Act (45 U. S. C. A., secs.
51–59) requires the former to be disregarded.''

■ Moreover, the question as to whether the plaintiff's
act of jumping from the top of the moving freight-car con-
stituted contributory negligence on his part, was also a prob-
lem for the jury to decide. (*Potter* v. *Los Angeles etc. R.
Co.*, 42 Nev. 370 [177 Pac. 933].)

It was the duty of the plaintiff to board these cars which
were rolling back toward the switch, and stop them, if pos-
sible, by setting the brakes. He was attempting to perform
this very duty when the collision occurred. When he saw
the head car strike the cars which were rolling in upon
track number six, and observed the head car ''rear up''
and ''tip slightly'', he thought the entire string of cars
upon which he rode, would overturn. This was not an un-
reasonable conclusion under the circumstances. In this
emergency, anticipating a wreck, he jumped from the top
of the freight-car to the ground and was injured. The
question as to whether this act constitutes contributory neg-
ligence was for the jury to determine. If a reasonably
prudent person would have been warranted in concluding
that it was wise to jump from a car under similar circum-
stances to save himself from imminent peril, then that act
would not constitute contributory negligence. The jury
was fully and correctly instructed regarding this issue.

■ Moreover, since the implied finding of the jury is to
the effect that a proximate cause of the accident was the
maintenance of the defective brake, the defendant's viola-
tion of the Safety Appliance Act became a bar to the de-
fense of contributory negligence, unless the negligence of
the plaintiff was the sole cause of the injuries which he
received.

The federal Employers' Liability Act, chapter 149, section 3, 35 Stats., page 66, U. S. C. A., title 45, section 53, page 379, provides in part: "No such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

In the case of *Potter* v. *Los Angeles etc. R. Co.*, 42 Nev. 370 [177 Pac. 933], it was held that a brakeman who was injured in jumping from a moving freight-car in the process of switching, to escape imminent danger proximately caused from losing control of the train on account of a defective coupling device, was not barred from recovering damages, provided he was reasonably warranted in apprehending imminent danger.

When the injuries of the employee are sustained as a result of failure to equip the cars with efficient hand-brakes contributory negligence is not a bar to the recovery of damages unless the employee's negligence is the sole cause of his injuries. (Affirmed, *Marcone* v. *New York Central R. Co.*, 105 N. J. L. 466 [144 Atl. 635], *New York Cent. R. Co.* v. *Marcone*, 281 U. S. 345 [74 L. Ed. 892, 50 Sup. Ct. Rep. 294].)

The question as to whether the plaintiff's negligence was the sole cause of the injuries which he sustained as a result of jumping from the car, is for the jury to determine. (*Missouri Pac. R. Co.* v. *Jones*, (Tex. Com. App.) 24 S. W. (2d) 32; *Lusk* v. *Osborn*, 127 Ark. 170 [191 S. W. 944].) This question was resolved against the defendant.

█ It may not reasonably be said the plaintiff assumed the risk of such unwarranted negligence as running a string of cars into a siding just in time to collide with other cars visibly rolling out upon the switch at that very time. Nor does an employee assume the risk of a collision which occurs as the result of violating an act requiring all cars to be supplied with efficient brakes.

The federal Employers' Liability Act, chapter 149, section 4, 35 Stats., page 66, U. S. C. A., title 45, section 54, page 434, provides: "In any action brought against any common carrier . . . to recover damages for injuries . . . such employee shall not be held to have assumed the risks

of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

In the case of *Union Pac. R. Co.* v. *Huxoll*, 245 U. S. 535 [62 L. Ed. 455, 38 Sup. Ct. Rep. 187, see, also, Rose's U. S. Notes Supp.], it is held that the doctrine of an employee's assumption of risk is not a defense to an action for damages resulting from a failure to keep a power brake in efficient working condition.

It is uniformly held by a multitude of authorities that a servant assumes all the normal risks incident to his employment which are known to him or which, in the exercise of ordinary care on the part of a person of reasonable prudence and intelligence should be ascertained. (U. S. C. A., tit. 45, note 24, p. 448.) The doctrine of the assumption of risk on the part of a brakeman does not apply when a switchman negligently runs a string of cars on to a siding so as to collide with another string of cars, which in the exercise of ordinary care, he should have seen rolling down toward the switch. The brakeman is not presumed to anticipate such reckless conduct. (*Reed* v. *Director General of Railroads*, 258 U. S. 92 [66 L. Ed. 480, 42 Sup. Ct. Rep. 191, see, also, Rose's U. S. Notes Supp.].)

The appellant contends that the plaintiff is barred from recovering damages in this action because he procured his employment by means of fraud and misrepresentation.

In applying for his position with the defendant, the plaintiff signed an application in which he made the statement that during three years prior thereto he had been working on his brother's farm. At the trial he admitted this was not true and that he was employed on his brother's farm only one year. When asked why he had made this misstatement of facts, he said that if it were known that an applicant for a position with a railroad company had been out on a strike, he might not get a job. The plaintiff had worked as a brakeman for other railroad companies for some twelve years. The inference is that he may have previously gone out on a strike with the employees of some other company. There is no evidence that this is true. But even though it were true, it would not impair his ability to work as a brakeman, or his loyalty to the company

with which he was employed. It does not even appear that the defendant railroad company had a rule against employing railroad hands who had formerly participated in a strike, or that knowledge on its part of his having done so, would make any difference regarding his employment.

We are of the opinion the misrepresentation regarding his former employment was upon an immaterial matter, and that it therefore does not bar his right of recovery.

■ Moreover, the defendant pleaded no bar to recovery in the present action on the ground of misrepresentation and fraud. The effect of obtaining employment by means of fraud would render a contract of employment void. It is a cardinal rule of law that one who relies upon fraud as an affirmative cause of action, or as a defense, must ordinarily allege and prove the facts constituting such fraud.

The appellant relies upon the case of *Minneapolis, St. Paul & S. M. R. Co.* v. *Rock,* 279 U. S. 410 [73 L. Ed. 766, 49 Sup. Ct. Rep. 363]. In that case the plaintiff was physically disqualified from passing the necessary examination to entitle him to employment with the railroad company. He had been previously examined and rejected by the same company. He then sent another man, who impersonated Rock and represented himself to be the plaintiff in whose name he successfully passed the physical examination and was accepted as an employee. Armed with this card of employment, the plaintiff Rock presented himself and worked for the company for some time until he was injured in an accident. It was there properly held the plaintiff had never himself passed the physical examination required of applicants, and that he was not the individual who was actually employed. For this reason it was held his fraud barred him from recovering damages.

This case may be reasonably distinguished from the case at bar. In the Rock case the plaintiff was never really employed by the company. In the present case the plaintiff was employed. At most he merely exaggerated the length of time he was actually employed on his brother's farm. There is no evidence in the record indicating that this misstatement was material, or that a rule existed which would have prevented his employment even if he had admitted that he had once participated in a railroad strike while he

was employed with some other company. Moreover, the defendant waived its defense on the ground of fraudulent employment by failing to plead the facts.

The appellant charges error in the refusal of the court to give a portion of its instruction number 26. The portion which was given reads as follows: "You are instructed that you may not speculate as to whether the defendant was negligent with respect to any matters shown in connection with the alleged injury, but such negligence, if any, must be established by the plaintiff by a preponderance of the evidence." Following the preceding language there was a paragraph elaborating or applying the principle which is there declared to the facts of the present case, which was omitted in the court's charge. The refusal to give this explanatory clause is charged as error. It read: "And if the evidence leaves the real cause of the injury to the plaintiff, Harry H. Qualls, as a matter of conjecture or doubt, then your verdict must be for the defendant." The last-mentioned paragraph might properly have been given in the charge. The omission, however, does not constitute prejudicial error. The same principle is contained in both portions of the instruction. The first part informs the jury they may not base a verdict upon speculation as to existing facts, but the negligence of the defendant must be established by a preponderance of evidence. The omitted part merely reinforces the same idea by saying in the event the evidence leaves the question of negligence in doubt or furnishes a mere conjecture as to its solution, the verdict must be rendered in favor of the defendant. The jury had been previously clearly instructed the burden was on the plaintiff to establish the negligence of the defendant by a preponderance of the evidence. There was no error in omitting the last portion of the foregoing instruction.

The same observations are equally applicable to defendant's instruction number 6, which was rejected. This instruction also reiterated the principles formerly and fully given to the jury to the effect that the burden rested on the plaintiff to establish the charge of defendant's negligence by competent evidence and that the question of negligence could not be left to mere conjecture or doubt.

There was no prejudicial error in omitting this charge.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 18, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 16, 1931.