## PAYNE, Director General of Railroads, v. CONNOR.

(Circuit Court of Appeals, First Circuit. August 2, 1921.)

No. 1507.

**1. Master and servant ⚏276(1)—Evidence held to warrant recovery for brakeman's injuries.**

In an action for injuries to a brakeman, struck by cars behind which he was passing when they were put in motion by other cars bumping against them, evidence *held* sufficient to warrant findings that the railroad company failed· to equip the standing cars with sufficient and adequate brakes, in violation of the Safety Appliance Act (Comp. St. §§ 8605–8623) ; that it was negligent in kicking cars unattended at the rate of 10 or 15 miles an hour against the standing cars, and in not providing rules limiting the speed ; that plaintiff was not negligent in crossing the track, and did not assume the risk ; that the injury was due to defendant's negligence in kicking the cars against the standing cars ; and that the failure to sufficiently and adequately equip the standing cars with brakes also contributed to the injury.

**2. Master and servant ⚏264(2), 228(2)—Contributory negligence and assumption of risk immaterial, when brakes are insufficient.**

Under Act April 22, 1908, §§ 3, 4 (Comp. St. §§ 8659, 8660), Act April 14, 1910, § 2 (Comp. St. § 8618), and Act March 2, 1893, § 8, a railroad company's duty to equip and maintain cars with sufficient and adequate brakes was an absolute one, and if it failed to do so an injured brakeman's contributory negligence or assumption of risk was immaterial.

**3. Master and servant ⚏288(3)—Brakeman's assumption of risk for jury.**

A railway brakeman, passing behind cars standing in the yards, did not as a matter of law assume the risk of injury from other cars being kicked against them, where there was evidence that it was an unusual occurrence and a departure from the ordinary conduct of the business to kick cars at such a rate of speed as was used.

**4. Trial ⚏260(1)—Refusal of instructions already given not error.**

The refusal of requested instructions which had already been given in the charge, or the substance of which had been previously given, was not error.

**5. Master and servant ⚏285(7)—Proximate cause of brakeman's injury held for jury.**

In an action for injuries to a brakeman, struck by cars behind which he was passing when they were put in motion by other cars kicked against them, where there was evidence that the brakes on the standing cars were not in good order, it was a question for the jury whether this alleged violation of the Safety Appliance Act (Comp. St. §§ 8605–8623), was a contributing cause of the injury.

**6. Master and servant ⚏270(5)—Evidence as to stopping cars with brakes before injury held admissible.**

In an action for injuries to a brakeman, struck by cars put in motion by others kicked against them, where it was claimed that the brakes on the standing cars were not in good order, evidence that when they were kicked, a few minutes before the accident, a brakeman riding thereon undertook to stop them where he was directed, but that because of the condition of the brakes they went several car lengths beyond where he wanted, and reasonably expected, to stop them was admissible.

**7. Appeal and error ⚏1048(5)—Question held harmless, in view of answer.**

In a brakeman's action for injuries, in which it was claimed that the brakes on cars put in motion when struck by others were defective, a question asked a conductor as to whether such cars did not go further than he intended them to go, when kicked shortly before the accident,

was harmless, where he answered that he had no particular place in mind where the cars should stop.

8. **Appeal and error ⬤═231(7)—When mistake in question not called to counsel's attention, objection not available on appeal.**

Where the inadvertent reference to a railroad for which a witness was working at the time of the trial, in a question concerning his knowledge of the ordinary speed at which cars were dropped or kicked, and the distance loaded standing cars would move when struck by cars kicked against them, was not called specifically to the attention of counsel, the objection is not available on appeal.

9. **Appeal and error ⬤═1033(3)—Evidence held more favorable to defendant than plaintiff, and not prejudicial.**

In an action for injuries to a brakeman, struck by cars set in motion when others were kicked against them, the testimony of a witness concerning the ordinary speed at which cars were kicked, and the distance loaded standing cars would move when others were kicked against them, *held* more favorable to defendant than to plaintiff, and not prejudicial to defendant, especially where it was cumulative.

10. **Witnesses ⬤═286(4)—Wages of brakemen at time of trial held properly proved on redirect examination in brakeman's action for injuries.**

In a brakeman's action for injuries, where defendant on plaintiff's cross-examination brought out the facts that at the time of the injury he was receiving $25.90 a week for seven days of work, and at the time of the trial was receiving $23 a week for six days of work in a drug store, evidence on redirect examination that at the time of the trial brakemen were making $6.48 a day was properly admitted, to show the wages he would have received in his usual employment, but for the injury.

11. **Evidence ⬤═314(1)—Testimony concerning wages of brakemen not hearsay, when witness testifies from personal knowledge.**

In a brakeman's action for injuries, though he was not working as a brakeman at the time of the trial, his testimony as to the then wages of brakemen was not objectionable as hearsay, where he was apparently testifying from personal knowledge.

In Error to the District Court of the United States for the District of Maine; Clarence Hale, Judge.

Action by John H. Connor against John Barton Payne, Director General of Railroads. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles B. Carter, of Lewiston, Me. (White, Carter & Skelton, of Lewiston, Me., on the brief), for plaintiff in error.

William H. Gulliver, of Portland, Me., for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a writ of error from a judgment in favor of the plaintiff in an action brought by John H. Connor in the District Court for the District of Maine under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) and the Safety Appliance Act (Comp. St. §§ 8605–8623), for injuries sustained by him June 23, 1918, while in the employ of the Portland Terminal Company, a railroad engaged in interstate traffic and under the control and management of John Barton Payne as Agent and Director General.

The declaration contained one count, and alleged that the defendant at the time of the injury was a common carrier engaged in interstate

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

commerce, and that the plaintiff was in its employ as a brakeman in interstate commerce; that the defendant failed to furnish the plaintiff a safe place in which to perform his work, and to provide reasonable and sufficient rules and regulations for the conduct of its business; that it was guilty of negligence in shunting with too great force and speed certain of its cars upon three still cars standing on the main turnout in its yard without warning the plaintiff, and in failing to securely set the brakes on the still cars; and that it failed to equip and maintain said still cars with suitable brakes and appliances, as required by the Safety Appliance Act. The defendant pleaded the general issue, with a brief statement in which it admitted that the plaintiff and defendant were engaged in interstate commerce at the time of the injury, and alleged that the plaintiff was not in the exercise of due care and that he assumed the risk.

In its assignment of errors the defendant complains that the court erred (1) in not directing a verdict in its favor, on the ground (a) that the plaintiff assumed the risk, and (b) that there was no evidence from which it could be found that the defendant was in default under the Safety Appliance Act, or that it was guilty of negligence; (2) that the court erred in charging the jury on the question of assumption of risk, in that it did not further tell them that if the plaintiff knew, or in the exercise of reasonable care should have known, that the defendant was kicking the cars negligently—too fast, etc.—he assumed the risk; (3) that it erred in refusing to give the defendant's second, third, fourth, and fifth requested instructions; (4) in admitting the testimony of Vanier and Cannon as to whether either of them stopped the cars where they intended to; (5) in admitting the testimony of Rainy (a) as to what he had observed in switching operations on the Grand Trunk; (b) as to what is the ordinary rate of speed upon that road; (c) in the reception of his testimony as to how far three loaded cars, if properly braked, would be moved if three or four cars were kicked down upon them at the rate of 4 to 6 miles an hour; and (d) because said witness was not qualified as an expert; and (6) that the court erred in admitting the testimony of Connor as to what pay a brakeman in the defendant's employ received at the time of the trial.

The railroad yard in which the plaintiff was employed consisted of a number of tracks, including a main line and various cross-overs. It was a place where freight trains were reclassified and made up. The tracks in this locality run substantially east and west. There were various buildings about the yard, among which were the yardmaster's office and a lobby, where the employees changed their clothing. North of the yard and adjoining it was a highway known as Commercial street. Emery street ends at the edge of a cliff overlooking Commercial street and the yard, and at the foot of that street a flight of steps descends to Commercial street at a point near the yardmaster's office. The employees of the defendant living in that part of the city of Portland were accustomed to use these steps in going to and from their work in the yard, and to the yardmaster's office and the lobby, and to cross the tracks there in going to and from the repair shops and roundhouse. In the course of the work of shifting cars and making up trains on the

morning of the accident, three loaded box cars were kicked down upon the main turnout; and stopped so that the east end of the easterly car was about opposite the office. Later in the progress of the work four more loaded cars were kicked in upon the main turnout and allowed to run into the three still cars; there being no one on the four cars to brake them down. At or about the time the four cars struck the still cars, the plaintiff and his conductor, Dougal, their work being about finished, came from the east, riding upon an engine used in their work, and on reaching a position a short distance easterly of the east end of the still cars they stepped off, intending to go to the office or lobby, the conductor leading the way, and crossed the track on which the still cars were and about 8 feet easterly thereof. The conductor passed safely over the track, although he was struck after he had passed beyond the northerly rail; but the plaintiff, who was a short distance behind him, was struck and knocked down by the three cars, which had been suddenly put in motion by being struck by the four kicked cars, and one of his legs was broken and he suffered permanent injuries.

The evidence tended to show that at the time the three cars were kicked from the west down the main turnout a brakeman by the name of Vanier was aboard them; that he had been instructed by his conductor to ride them down on that line and to stop them at a point so that there would be room to receive four other cars, which he was to kick in upon that line, and leave a clearance between the four cars and cars that might pass on adjacent lines; that Vanier, in the performance of his duty, undertook to brake down the cars to meet this requirement, but the brake on first car was worthless, that on the next would not hold, and that after reaching the third car and braking it he succeeded in stopping the three cars some three car lengths beyond where he had undertaken to stop them; that the rate of speed at which the four cars were kicked upon the three still cars was from 10 to 15 miles an hour; that, although the defendant had no rules limiting the speed at which cars should be kicked, but left it to the discretion of the conductor, the usual and reasonable speed was from 4 to 6 miles an hour; that cars like the three cars, if adequately braked, when struck by cars moving at the rate of 4 to 6 miles an hour, if moved at all, would not be moved more than 2 or 3 feet, but that in this case they were driven back with a jump and continued on for three or more car lengths; and that the main turnout in this locality had a slight grade to the east. A rule of the company provided that—

"Cars left on side tracks must be properly secured by brakes being set, and, when necessary, trigged. Standing on grade, all cars must be coupled. They must not obstruct the use of other tracks, or in any way endanger the safety of passing trains," etc.

The evidence further tended to show that there was danger that cars left standing on the main turnout unbraked would, on account of the grade, run easterly, and, if the turnout switch was open, go onto the main line. There was evidence that neither the plaintiff nor his conductor heard or saw the oncoming four cars, and that the smoke of their engine was likely to obscure the sight of the oncoming cars, had

they looked in that direction; that there was much noise in the yard; and that the oncoming cars on the downgrade would move with comparatively little, if any, noise.

[1] From the evidence we think reasonable men might find (1) that the defendant failed to equip the three standing cars with sufficient and adequate brakes, and in so doing acted in violation of the Safety Appliance Act; (2) that it was negligent in kicking the four cars unattended at the rate of 10 or 15 miles an hour upon the still cars, and in not providing rules limiting the speed at which such work should be done; (3) that the plaintiff was not in fault in undertaking to cross the track at the time and in the manner he did and did not assume the risk; (4) that his injury was due to the defendant's fault in negligently kicking the four cars into the still cars; and (5) that the failure of the defendant to sufficiently and adequately equip the three still cars with brakes also contributed to his injury.

[2] As there was evidence from which the jury could have found that the brakes upon the three cars were insufficient, and that their insufficiency contributed to the plaintiff's injury, the plaintiff was entitled to have his case submitted to the jury on that ground alone. In such case the questions of contributory negligence and assumption of risk would be immaterial. 35 Stat. at Large, p. 66, c. 149, §§ 3 and 4 (Comp. St. §§ 8659, 8660); 36 Stat. at Large, p. 298, c. 160, § 2 (Comp. St. § 8618); 27 Stat. at Large, p. 532, c. 197, § 8. The defendant's duty to equip and maintain its cars with sufficient and adequate brakes was an absolute one. C., B. & Q. Ry. v. United States, 220 U. S. 559, 570, 31 Sup. Ct. 612. 55 L. Ed. 582; Norfolk & W. Ry. Co. v. United States, 177 Fed. 623, 101 C. C. A. 249.

[3] But if it be assumed that the insufficient brakes upon the cars in no way contributed to the plaintiff's injury, and that the sole cause was the excessive speed at which they were kicked upon the still cars, it cannot be said, as a matter of law, that the plaintiff assumed the risk of injury from such a source of danger, for the evidence shows that the act of kicking cars at such a rate of speed into still cars was an unusual occurrence, a departure from the ordinary conduct of the business, so that the question, in any view of the case, was one for the jury to pass upon.

On the question of assumption of risk the court charged the jury that—

"Under the federal Employers' Liability Act, the plaintiff assumes the ordinary risks * * * of his employment, and such extraordinary risks as he knew or in the exercise of due care should know. He does not assume the risk of any negligence on the part of the defendant, its officers, agents, employés, or servants, of which he does not know or which in the exercise of reasonable care he could not have known."

And it explained specifically and in detail the meaning of the rule as applied to the evidence in the case. To this no exception was taken. At the close of the charge the defendant submitted five requests for instructions. The first was:

"That a servant assumes the extraordinary risks incident to his employment or the risks caused by the master's negligence, which are obvious or fully known and appreciated by him."

It may be doubted whether extraordinary or unusual risks are incidents of a servant's employment; but, whether they are or not, this request was given in the language requested. The remaining requests were denied, except so far as they were given in substance in the charge.

The second request raised one of the questions which we have previously considered on the motion to direct a verdict and needs no further consideration.

[4] The third request presents two questions: The first is that the alleged violation of the Safety Appliance Act, if proved, was no part of the cause of the injury and damage complained of. This question has previously been disposed of. The second is that the jury should have been instructed that the plaintiff—

"assumed the ordinary risks incident to his employment and the risks caused by the master's negligence which are obvious and fully known and appreciated by him."

This instruction had already been given in the charge.

[5] The fourth request was that the proximate cause of the plaintiff's injury was the force which was applied to the still cars, which hit the plaintiff and knocked him down, and that this force "was the moving cars which were running east toward the three stationary cars," and therefore "the alleged violation of the Safety Appliance Act, so called, is no part of the causation of the injury alleged in this action." As previously pointed out, the proximate cause of the injury was, on the evidence, a question for the jury, and the court rightly refused to rule, as a matter of law, that the failure of the defendant to have the still cars equipped with suitable brakes was not a contributing cause.

The fifth request was:

"That, even if the defendant were guilty of negligence, yet if the injury was one the danger of which was or should have been obvious or fully known and appreciated by the plaintiff, then the plaintiff is barred from recovery, because he assumed the risk of all damage growing out of such danger."

The defendant takes nothing by this exception, as this request had in substance previously been given.

[6, 7] One Vanier was called as a witness for the plaintiff. He was the employee who, on the morning of the accident, rode down the three cars and undertook to stop them as directed by his conductor, Cannon. He testified that his crew hauled in about ten cars over the main line, took the cross-over leading to the main turnout, and kicked the three cars down (that is easterly on the down grade); that they did this five or ten minutes before the accident; that he rode down on the head car; that his conductor, Cannon, told him that after doing certain work he would be back and kick four more cars down upon him; that he was to ride the three cars down, and put on the brakes when he thought they were down far enough, so that the track would hold four additional cars; that when he started to apply the brake on the head car it would not work and was worthless; that he set the brake on the second car as tight as he could, but the cars did not stop; that he ran to the third car and put on that brake, which finally stopped the cars; that they stopped about opposite the yard office, but had gone three, four, or five

car lengths beyond where he wanted them. This evidence was admitted over the defendant's exception.

Cannon, the conductor, was called by the defendant. He testified on direct examination that he had control of the switching movements of his crew, and that when he came back onto the main turnout he kicked the four cars upon the three that had been sent down that line; that he pulled the pin for the purpose of kicking the four cars; and that when he pulled the pin the easterly end of the four cars from the three standing cars was about seven car lengths. And on cross-examination he testified that he told Vanier to ride down the three cars, so that the line would hold three or more cars that he was going to kick down upon them; that he "only intended to have seven cars at that time on the main turnout." He was then asked the following question: "Now, sir, as a matter of fact did not those three cars go further than you intended them to go?" and, subject to defendant's objection and exception answered: "I had no particular place in mind where the cars should stop." In answer to further questions he stated that it was for him to determine where cars should be stopped.

We think it was competent for Vanier to testify where he was directed to stop the cars, that he undertook to stop them as directed, and that they went down the line three or more car lengths beyond where he undertook and reasonably expected to stop them, and that this is all the testimony comes to. The question put to Cannon was of the same character, and in any view of the matter, when considered in connection with his answer, was not harmful. This disposes of the fourth assignment of error.

[8, 9] One Rainy was called as a witness for the plaintiff. At the time of the trial he was a yard conductor in the Grand Trunk yard at East Deering and Portland. At the time of the accident he was employed by the defendant in yard No. 8, where the accident occurred. He had worked there about six years, and was fully acquainted with the tracks in that yard and the method of conducting the business. He was questioned particularly with reference to the method of doing the business in that yard, the grade of the main turnout, and the necessity of having the cars braked on that line. In the course of his examination he was asked what, in his observation of switching operations on the Grand Trunk, where loaded cars were standing, was the ordinary speed that cars were dropped or kicked down upon them, and, subject to a general exception, answered that it was from 4 to 6 miles, and that if three or four loaded cars were kicked down at the rate of 4 to 6 miles an hour upon three or four other loaded cars, the standing cars, if properly braked, would move ahead about 5 feet, which question was also excepted to generally. Objection is now made to the question on the ground that it related to operations on the Grand Trunk. It is obvious from the testimony that the reference to the Grand Trunk was an inadvertence, and being a matter of this character, and not having been called specifically to the attention of counsel, the defendant should not be allowed to avail itself of this objection. Furthermore, the evidence shows that the witness, on account of his knowledge of the particular location, the method of doing work in the defendant's yard and his gen-

eral experience in that line of work, was competent to testify as to the distance cars would be shunted when struck in the manner set out in the above question. The evidence was cumulative, and, if anything, more favorable to the defendant than to the plaintiff, and we do not regard the defendant as prejudiced by its introduction.

[10, 11] On cross-examination of the plaintiff it appeared that at the time of the trial, which took place some two years after the accident, he was working in a drug store, and was receiving $23 a week for six days of work, and that at the time he was injured he was receiving $25.90 a week for seven days of work, or a little less per day than he was receiving at the time of the trial. On redirect examination he was asked what a brakeman for the defendant was then receiving per day, and testified, subject to exception, "$6.48 a day." We think the defendant's counsel, by pursuing the line of cross-examination that he did, laid the ground and rendered it competent for the plaintiff to show what wage, at the time of the trial, he would have received in his usual employment, had it not been for his injury due to the defendant's fault. It is also objected that the evidence was hearsay, but there is nothing in the record to show that this is so. He apparently was testifying from personal knowledge.

The judgment of the District Court is affirmed, with costs in this court to the defendant in error.

---

⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 10, 1921.