## MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY *v.* ROCK.

No. 454.   Argued March 8, 1929.—Decided May 13, 1929.

*Mr. Henry S. Mitchell,* with whom *Messrs. John E. Palmer, John L. McInerney,* and *James L. Hetland* were on the brief, for petitioner.

*Mr. Herbert H. Patterson* for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Respondent sued petitioner in the circuit court of Cook County, Illinois, under the Federal Employers' Liability Act, U. S. C., Tit. 45, §§ 51–59, to recover damages for personal injuries sustained by him while employed in petitioner's railroad yard at Kolze in that State. There

was a verdict for $15,000 in favor of respondent, and the judgment entered thereon was affirmed by the Appellate Court of the First District. 247 Ill. App. 600. Petitioner applied to the state Supreme Court to have the case certified to it for review and determination, but the application was denied.

Respondent asserts that the judgment is not one of the highest court of the State in which a decision in the suit could be had and that therefore this Court has no jurisdiction.

Section 120, c. 110, Cahill's Revised Statutes of Illinois, the material parts of which are printed in the margin,* makes judgments of the Appellate Courts final in all cases except those reviewable in the Supreme Court as a matter of right under the state constitution, those in which a majority of the judges of the Appellate Court make certificates of importance and grant appeals, and those brought up on writ of certiorari issued by the Supreme Court. This case is one in which the Supreme Court may issue writ of certiorari. *Kenna* v. *Calumet &c. R. Co.*,

---

* In all cases in which their jurisdiction is invoked pursuant to law, except those wherein appeals and writs of error are specifically required by the Constitution of the State to be allowed from the Appellate Courts to the Supreme Court, the judgments or decrees of the Appellate Courts shall be final, subject however, to the following exceptions: (1) In case a majority of the judges of the Appellate Court or of any branch thereof shall be of opinion that a case . . . decided by them involves a question of such importance . . . that it should be passed upon by the Supreme Court, they may in such cases grant appeals to the Supreme Court on petition of parties to the cause, in which case the said Appellate Court shall certify to the Supreme Court the grounds of granting said appeal. (2) In any such case as is hereinbefore made final in the said Appellate Courts it shall be competent for the Supreme Court to require, by certiorari or otherwise, any such case to be certified to the Supreme Court for its review and determination with the same power and authority in the case, and with like effect, as if it had been carried by appeal or writ of error to the Supreme Court. . . ."

206 Ill. App. 17, 44. The statute does not require one
seeking review to apply to the judges of the lower court
before presenting petition for certiorari to the Supreme
Court. It is held by the state courts that a denial of peti-
tion for certiorari in a case where a certificate of im-
portance has not been granted makes the judgment of the
Appellate Court final. While such denial is not an ap-
proval of the reasons on which the Appellate Court rests
its judgment, it is an approval of the conclusion reached
by it "and is therefore, in effect, an affirmance of the
judgment." *Soden* v. *Claney,* 269 Ill. 98, 102. *People* v.
*Grant,* 283 Ill. 391, 397. It would be unreasonable to
require a defeated party to apply to the judges of the
lower court for a certificate of importance and appeal
after the Supreme Court had so approved the judgment.

The judgment is reviewable here. "Whenever the
highest court of a State by any form of decision affirms
or denies the validity of a judgment of an inferior court,
over which it by law can exercise appellate authority, the
jurisdiction of this court to review such decision, if it
involves a Federal question, will, upon a proper proceed-
ing, attach." *Williams* v. *Bruffy,* 102 U. S. 248, 255.
And see *Gregory* v. *McVeigh,* 23 Wall. 294, 306.

We come to the merits. Respondent was an impostor.
His true name is Joe Rock. He obtained employment
and remained at work by means of deception and fraud.
October 1, 1923, he applied for employment as a switch-
man in petitioner's yard at Kolze. In accordance with a
rule and the practice of petitioner, respondent was sent to
the company's physician for physical examination. It
was found that he had been treated surgically for ulcer of
the stomach and removal of the appendix and that at the
time of the examination he had a rupture. His applica-
tion was rejected because of his condition. A few days
later, respondent under the name of *John* Rock, repre-
senting that he had not theretofore applied, again made

application for such employment. Petitioner's superintendent was deceived as to respondent's identity and accepted him, subject to examination to ascertain whether he was physically fit for such work, and sent him to the physician to be examined. Then respondent procured one Lenhart to impersonate him and in his place to submit to the required examination. The physician found Lenhart's condition satisfactory; and, believing that he was the applicant, reported favorably on the application. As a result of the deception petitioner gave respondent employment and it did not learn of the fraud until after December 24, 1924, the date on which respondent was injured.

We are called upon to decide whether, notwithstanding the means by which he got employment and retained his position, respondent may maintain an action under the Federal Employers' Liability Act.

The Act abrogates the fellow-servant rule, restricts the defenses of contributory negligence and assumption of risk, and extends liability to cases of death. And respondent in this action seeks, in virtue of its provisions and despite the rules of the common law, to hold petitioner liable for negligence of his fellow servants and notwithstanding his own negligence may have contributed to cause his injuries. Since the decision of this Court in the *Second Employers' Liability Cases,* 223 U. S. 1, 48, 51, it has been well understood that the protection of interstate commerce and the safety of those employed therein have direct relation to the public interests which Congress by that Act intended to promote. *Phila., Balt. & Wash. R. R.* v. *Schubert,* 224 U. S. 603, 614. *Watson* v. *St. Louis, I. M. & S. Ry. Co.,* 169 Fed. 942, 950. And see *McNamara* v. *Washington Terminal Co.,* 37 App. D. C. 384, 393.

The carriers owe a duty to their patrons as well as to those engaged in the operation of their railroads to take

care to employ only those who are careful and competent to do the work assigned to them and to exclude the unfit from their service. The enforcement of the Act is calculated to stimulate them to proper performance of that duty. Petitioner had a right to require applicants for work on its railroad to pass appropriate physical examinations. Respondent's physical condition was an adequate cause for the rejection of his application. The deception by which he subsequently secured employment set at naught the carrier's reasonable rule and practice established to promote the safety of employees and to protect commerce. It was directly opposed to the public interest because calculated to embarrass and hinder the carrier in the performance of its duties and to defeat important purposes sought to be advanced by the Act.

The evils and disadvantages likely to flow from such impostures are the same in kind as those which invalidate attempts of common carriers by contract stipulations to escape liability for their own negligence in respect of duties essential to their public calling. In *Railroad Company* v. *Lockwood,* 17 Wall. 357, an action to recover damages by one injured while being transported on a railroad train in pursuance of an agreement purporting to exempt the carrier from responsibility for the negligence of itself or its employees, the court said (p. 377): " In regulating the public establishment of common carriers, the great object of the law was to secure the utmost care and diligence in the performance of their important duties—an object essential to the welfare of every civilized community. . . . It is obvious . . . that if a carrier stipulate not to be bound to the exercise of care and diligence, but to be at liberty to indulge in the contrary, he seeks to put off the *essential duties* of his employment."

Respondent's position as employee is essential to his right to recover under the Act. He in fact performed the work of a switchman for petitioner but he was not of right

its employee, within the meaning of the Act. He obtained and held his place through fraudulent means. While his physical condition was not a cause of his injuries, it did have direct relation to the propriety of admitting him to such employment. It was at all times his duty to disclose his identity and physical condition to petitioner. His failure so to do was a continuing wrong in the nature of a cheat. The misrepresentation and injury may not be regarded as unrelated contemporary facts. As a result of his concealment his status was at all times wrongful, a fraud upon the petitioner, and a peril to its patrons and its other employees. Right to recover may not justify or reasonably be rested on a foundation so abhorrent to public policy. *Railway Company* v. *Lockwood, supra.* *Great Northern Ry.* v. *Wiles,* 240 U. S. 444, 448. *Stafford* v. *Baltimore & Ohio R. R. Co.,* 262 Fed. 807.

We need not consider any other question.

*Judgment reversed.*