## DAWSON v. TEXAS & P. RY. CO.
### No. 4058.

Court of Civil Appeals of Texas. Texarkana. Dec. 24, 1931.

Rehearing Denied Jan. 7, 1932.

S. P. Jones and Franklin Jones, both of Marshall, for appellant.

Bibb & Bibb, of Marshall, for appellee.

SELLERS, J.

Appellant T. A. Dawson sued the appellee Texas & Pacific Railway Company under the Federal Employers' Liability Act (45 USCA §§ 51–59) for the sum of $40,000 for injuries received to his back, hip, shoulders, and other parts of his body, while employed by appellee as a switchman in its yards at Longview. Said injury, as alleged, being occasioned by a handhold or "grabiron" on one of appellee's box cars giving way with appellant, causing him to fall from near the top of said car.

The appellant further alleged as follows:

"Plaintiff shows that he was injured as hereinafter set out as a proximate result of one or all of the following acts of negligence on the part of the defendant;

"(A) In that the defendant, through its agents, servants and employees, violated what is commonly called the Safety Appliance Law, title 45, § 4, United States Code [45 USCA § 4], in that defendant used, and required the plaintiff to use, a car which was not provided with secure grab irons or handholds in the ends and sides of said car.

"(B) Pleading in the alternative, plaintiff shows that if he be mistaken in stating that at the time he was injured, he was engaged in the work of forwarding interstate commerce, and if in fact he was not so engaged, then plaintiff says that at the time of his injuries hereinafter set out, he was at the command and instance of the defendant engaged in moving, and aiding the defendant to move, place, and/or locate intrastate freight being handled by the defendant in its business, and that defendant, through its agents, servants, and employees was negligent, as a matter of law, in violating article 6386 R. C. S. Texas, 1925, in that the defendant did negligently use said car which was not provided with sufficient and secure grab irons and/or handholds.

"Pleading in the alternative, plaintiff says that if his injury was not caused by the violation of the National Safety Appliance Laws, was not caused by the violation of the State Safety Appliance Laws, and that if plaintiff's cause of action is not controlled by the Federal Employers' Liability Law, that nevertheless plaintiff is entitled to recover the damages sustained by him because the injuries were inflicted upon him by reason of the negligence of the said defendant, its agents, servants and employees in using on its railroad the said car with defective, insecure and insufficient handholds and grab irons, which caused the plaintiff to fall and be injured."

The appellee in its answer, among other defenses, alleged:

"Further answering herein, the defendant avers that at the time of the alleged injury to the plaintiff, the plaintiff was an employee of the defendant, and that the defendant, at the time of said injury, was an interstate railway company, engaged in interstate commerce, and that the plaintiff, at the time of said alleged injury, was performing work in connection with interstate commerce and engaged in such commerce, and that at the time of said alleged injury, both the plaintiff and the defendant were engaged in interstate commerce within the terms and meaning of the Federal Employers' Liability Act, and that all of the rights and remedies of the plaintiff and the defendant are governed and controlled by said Act and the decisions of the Federal Court of the United States construing such Act.

"Further answering, the defendant alleges that under the rules and regulations of this defendant governing and controlling the employment of men working in the capacity in which the plaintiff was engaged, applicants for such employment are required to make written application to the defendant, and in said application they are required, in answer to questions printed in said application, to advise and notify the defendant of their physical condition, of the extent of their vision, and whether or not they have heretofore received any injuries whatsoever, and whether or not they have had any litigation with railway companies for injuries, such information being required by the defendant in order to determine the fitness of the applicant for the position applied for, and in order that the defendant may employ sound and uninjured persons to do the work which the plaintiff was required to do under his employment, in safety to themselves, their fellow servants and the public at large, the defendant further avers that the plaintiff made out such

an application to the defendant at the time the plaintiff was employed by the defendant, and that in said application the plaintiff fraudulently misrepresented to the defendant his condition, fraudulently misrepresented to the defendant that he, plaintiff, had never been injured, and had never had any litigation with any railway company for injuries received by him, and that the defendant relied upon and believed such written misrepresentations of the plaintiff, and so believing and relying upon the same, thereupon employed the plaintiff, when in truth and in fact, the plaintiff had theretofore received serious injuries, and had theretofore had litigation with a railway company by reason of the serious injuries received by him, and that if said fact had been known to the defendant, the defendant would not have employed the plaintiff, and that the defendant did not discover such fraud and such misrepresentation on the part of the plaintiff until after the institution of this suit, when the defendant, for the first time, learned that the plaintiff has, prior to his employment by the defendant, been seriously injured in such a manner that he would not have been given employment by the defendant had the defendant known thereof, or had the plaintiff not misled the defendant by his misrepresentations with reference thereto; that the defendant, in the discharge of its duties to its employees and to the public, was and is required to employ sound and uninjured persons in the capacity in which the plaintiff was employed, and that by reason of plaintiff's fraud in concealing from the defendant the fact that he had been theretofore seriously injured, and the fact that the plaintiff fraudulently misrepresented to the defendant that he had never been injured or had a claim or litigation against a railway company induced the defendant to employ the plaintiff, and the plaintiff's employment with the defendant was therefore brought about by, and was the direct result of the fraud and misrepresentations of the plaintiff himself, and had it not been for such fraud and misrepresentations, the plaintiff would never have been employed by the defendant, and would never have received the injuries he is alleged to have received, and that by reason of the premises, the plaintiff procured his said employment by fraud, and that therefore the relation of master and servant under the Federal Employers' Liability Act did not in fact exist between the parties and the plaintiff is not entitled to recover for the injuries which he alleged he has sustained."

At the close of the evidence, the court submitted the case to the jury upon special issues which the jury answered, and which established the following facts: (1) Plaintiff's injury was caused by a broken handhold. (2) The defendant was guilty of negligence which proximately caused plaintiff's injury, in us-

ing the car with a broken handhold at the time in question. (3) Plaintiff sustained damage in the sum of $2,625. (4) Plaintiff's present condition is not due to an injury he received on the Midland Railroad in 1910. (5) Plaintiff was not intoxicated at the time he was injured, and his injury was not caused by defective vision. (6) That the plaintiff, at the time he was employed by the defendant in 1917, was not by reason of the injuries he had sustained while working for the Midland in 1910, in any way diseased, or physically unfit, to perform the duties required of him under his employment with the defendant. Notwithstanding the jury's verdict, the court granted appellee's motion for judgment, and entered a judgment denying appellant Dawson any recovery whatever; and from this judgment the appellant Dawson has duly prosecuted this appeal.

■ It was conclusively established by the evidence that at the time appellant received the injury complained of on December 16, 1929, he was engaged in interstate commerce. On this point we find the following agreement: "It is agreed the plaintiff hired to the defendant as a switchman at Longview, Texas, and that his duties as such hireling consisted of working intermittently during any eight-hour shift in interstate commerce and intrastate commerce. In other words, some hours he would be working in interstate commerce and some hours in intrastate commerce. That at the very time the plaintiff was injured he was engaged in his duties as a switchman in making up an interstate train to Texarkana, Arkansas. The particular car on which he was injured being a Missouri Pacific car going from Dallas, Texas, to be delivered with other cars to the Missouri Pacific Railroad Company in Arkansas."

The appellant on the trial of the case, in substance, testified that he went to work for appellee in December, 1917, and that he had to fill out a written application in his own handwriting to secure the employment. The application as identified by appellant contains the following:

"10. I have had experience in railroad as set forth below: * * * (Stating a number of roads but omitting the Texas Midland Railway Company.)

"13. Were you ever injured on a railroad? If so, what road? 'No.' Date ――― Place ――― Extent of Injury ――― In what manner ―――.

"14. Have you ever had, or now have, a claim against or litigation with a railroad? 'No.' If so, what road? ―――."

It was established by appellant's testimony, as well as other evidence, that appellant had in 1910 worked for the Texas Midland Railway Company; that while engaged by the Texas Midland he received personal injuries for which he brought suit against the

Texas Midland in the district court of Hunt county, alleging permanent injuries to his back, and hip, and recovered a judgment for the sum of $3,000 against said company for such injuries. Appellant testified:

"In making out this- application for employment with the Texas & Pacific I omitted saying anything about having ever been employed by the Texas Midland. I knew it was a fact if I told the Texas & Pacific Railway Company in my application that I worked for the Texas Midland they would have investigated and found out about my accident I had up there. I knew they would do that. I did not put on the application that I ever worked for them.

"If I has stated that I had a suit with the Texas Midland Railroad, I don't know whether the Texas & Pacific would have employed me or not. In case of a lawsuit supposed not to. That is what operated on my mind. Whether that was true or not I didn't want to stir that up. It is a fact that is the reason I didn't give the Texas Midland as a reference. It is a fact that the references men give has some bearing on whether they get a job and whether their application is approved or not. If you don't have good references they turn the application down.

"This rule I speak of about 60 days, gave the railway company 60 days time in which to make an investigation of my application. I understood they would make such investigation. Yes, I understood had I told them about having worked for the Texas Midland Railroad they would have investigated and found out about my injury and suit, and knowing that fact I did not put the Texas Midland in there as one of the railroads I worked for. It is in that application that I stated 'No' to the question whether I had ever received an injury."

"Q. You did that to keep the railway company from investigating and finding out about your injury at Greenville? A. If I could make a living and get employment. That is the way I made my application and I have told you why I didn't tell them about being hurt."

■ The above facts being undisputed, they are believed by this court to be sufficient to sustain the trial court in concluding that appellant secured and held his employment with appellee by fraud. The appellant at the time of-making his application to appellee for employment withheld the very information which he knew, under the rules of the company, if known to it, would have prevented him from securing his employment. These facts alone are deemed a sufficient answer to appellee's contention that there is no evidence to show that appellee had a regulation that would have prevented appellant from obtaining employment had he advised appellee of his suit against the Texas Midland Railway Company.

It being also conclusively established that appellant at the time of receiving his injury was engaged in interstate commerce, the trial court correctly, in our opinion, followed the law as announced by the Supreme Court of the United States in the case of Minneapolis Railway v. Rock, 279 U. S. 410, 49 S. Ct. 363, 365, 73 L. Ed. 766, to the effect that there can be no recovery by an employee for personal injuries to himself who has secured his employment through fraud, under the Federal Employers' Liability Act, and there was no error by the court in setting aside the verdict of the jury and entering judgment for appellee.

■ Appellant's contention that he is entitled to recovery under the common law as applied in Texas cannot be sustained. Appellant brought his suit under the Federal Employers' Liability Act to recover as an employee. He was engaged in interstate commerce at the time he was injured. Whatever rights the appellant has depend upon the Federal Employers' Liability Act and the common law as interpreted and applied in federal courts. N. O. & N. E. Rwy. v. Harris, 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167.

In the case of F. W. & D. C. Ry. v. Griffith (Tex. Civ. App.) 27 S.W.(2d) 351, 353, wherein the facts are very similar to this case, the court held:

"This suit being brought under the Federal Employers' Liability Act, and because the record shows that, as a switchman, appellee was continually engaged in interstate commerce, the decision of the Supreme Court of the United States, upon the question involved, will control whenever there is a conflict between such decision and the decision of state courts. M. K. & T. Railway Co. v. Jordan (Tex. Civ. App.) 2 S.W.(2d) 312; H. & T. C. Railway Co. v. Robins (Tex. Civ. App.) 23 S.W.(2d) 461; T. & P. Railway Co. v. Gibson (Tex. Com. App.) 288 S. W. 823; Sears v. T. & N. O. Railway Co. (Tex. Com. App.) 266 S. W. 400.

"Although there are decisions in Texas holding that fraud practiced by an employee in seeking employment is no defense to an action by the employee for damages that are sustained, the Federal Employers' Liability Act was not involved and such decisions were rendered prior to any definite pronouncement by the Supreme Court of the United States upon such a state of facts."

Appellant insists that since he secured his employment with appellee in 1917, and performed faithful service from that time until his injury in 1929, that this long lapse of time should intervene to prevent appellee's setting up the defense that he secured his employment through fraud, although he cites no authority to support his contention, and neither has this court been able to find any authority

with which to support it. The court in the Rock Case, supra, had this to say: "The misrepresentation and injury may not be regarded as unrelated contemporary facts. As a result of his concealment his status was at all times wrongful, a fraud upon the petitioner, and a peril to its patrons and its other employees. Right to recover may not justly or reasonably be rested on a foundation so abhorrent to public policy."

So it would seem from this language, and the principle there applied in bar of recovery, that the length of time which intervened between the employment of appellant under the fraudulent contract and the date on which he received his injury will afford appellant no relief, since during all such period of time he was in a status that was wrongful, and because of such status a right of recovery could not, upon grounds of public policy, be predicated.

Believing that the trial court correctly disposed of this case, the judgment is in all respects affirmed.