Civil action to recover for injury allegedly caused by actionable negligence of defendants.
Plaintiff for cause of action, briefly stated, alleges: That on 26 August, 1937, he was an employee of the Seaboard Air Line Railway Company, and was on duty as trainman on one of its freight trains, running between Norlina, North Carolina, and Portsmouth, Virginia; that at Boykins, Virginia, it became his duty to uncouple a car to be set off from the train there; that in the performance of that duty it was necessary for him to go between that car and the one next to it, and to release the air hose which there operated the air brake; that while he was between the cars and in the act of turning the angle cocks on the air hose "the said train was suddenly and violently, without any previous warning or notice to this plaintiff, carelessly, recklessly and negligently moved by said defendant . . . and the plaintiff's arm was caught between the *Page 691 
drawhead and bumper . . . and as result . . . mashed, mutilated, and rendered permanently useless, to his great damage."
Defendants in their amended answer deny plaintiff's allegations of negligence, and, for further defense, (1) invoke the provisions of the Federal Employers' Liability Act, (2) plead (a) the contributory negligence of, and (b) assumption of risk by plaintiff, and (c) fraud of plaintiff in obtaining employment by falsely and knowingly representing that he was twenty-one years of age, and (3) aver that as result of such fraud plaintiff cannot maintain an action under the Federal Employers' Liability Act, because he was not an employee.
These facts appear to be uncontroverted:
1. At the time of plaintiff's injury the defendants, receivers of the Seaboard Air Line Railway Company, were engaged in interstate commerce and the right, if any, of plaintiff to recover in this action arises under the must be determined by the provisions of the Federal Employers' Liability Act. U.S.C.A., Title 45, sections 51-59.
2. Rule 705 of defendants' printed Rules and Regulations for the Government of the Operating Department provides that "Minors must not be employed in train, engine or yard service." In printed Train Rules Examination, submitted by defendants, plaintiff answered "Yes" to the question, "Have you secured a copy of the current rules and are you conversant with same?" And, while plaintiff testified that at time of his examination he did not know of Rule 705, he knew that it was a rule of the railroad not to employ minors in train service.
3. Plaintiff, in his written application for employment filed with defendants on or about 15 March, 1937, gave the date of 16 February, 1916, as that of his birth, and stated to defendants' trainmaster, by whom he was examined for employment, that he was twenty-one years of age, when in fact he was born on 13 December, 1917, and was then a minor. The representations as to his age were made by plaintiff for the purpose of deceiving defendants and obtaining employment by them.
4. The trainmaster, who gave the examination, found plaintiff "physically and mentally fit to do the work," and he was given employment about 1 April, 1937, and worked, though not regularly, until 26 August, 1937, when he was injured.
Defendants aver and on the trial below offered evidence tending to show that they were deceived by the misrepresentations made by plaintiff as above stated, and that if they had known he was not twenty-one years of age, he would not have been employed.
Plaintiff replying to amended answer of defendant denies their averments as to contributory negligence and assumption of risk, and alleges that on 1 April, 1937, when he was employed by defendants' agent to work as a trainman on their trains "he was in his twentieth year of age, *Page 692 
was strong in mind and body, weighed about 150 pounds, and was fully able in every respect to do the work and services of a man of mature years"; and that his injury was "in no way caused by the plaintiff's nonage, immaturity or want of physical or mental capacity to do the work he was employed to do and about which he was engaged when . . . injured . . . by the gross negligence and want of care of said defendants and their employees."
Plaintiff, as witness for himself regarding his duties and the manner of his injury, testified substantially as follows: "I had to couple and uncouple cars, throw switches and unload merchandise. Bob Bryant was conductor in charge of the freight train I was on on August 26, 1937, . . . The engineer was Mr. Rozar and a colored fireman . . . I was injured on that day on my hand and arm. I was uncoupling a car at Boykins, Virginia. I was instructed by the conductor to set off a car at Boykins, Virginia, on a sidetrack, and to do this you have to uncouple the air hose, release the air brake and then pull the pin. In uncoupling the air there is one on one car and another on the other over a draw. I turned the angle cock. I turned to the other to turn that out, and in doing so braced myself on the other car, and while in the act of turning that out the train was suddenly moved, and I caught my hand in between the drawhead and the bumper on the car. I did not give the conductor or engineer any order to move the car. I could not. I was in between the two box cars . . . I do not know who signaled the engineer to move the car. The conductor at that time was standing right behind me . . . I was familiar with the duties of coupling and uncoupling cars, just about all you have to do. I had been working for the railroad about six months."
Then, on cross-examination, plaintiff continued: "I was familiar with the construction of box cars and other types of cars on the railroad. There was a hand hold on the end of each of those cars coupled together and which I was uncoupling. The hand hold was a little over one foot long, I guess. . . . A hand hold is a bar on the end of the box car if you want to climb through over the drawhead, or hold to it. I could hold to it. . . . When I went to work Mr. Norris, trainmaster, asked if I was lefthanded . . . I gave a signal and he asked if I was lefthanded, and I told him that I was . . . Doing the work with my left hand I could not use any hand rail, could not stretch out that far to hold to the hand rail and turn the angle cocks on the other car."
Plaintiff further testified in substance that he did not look to see if there was a hand hold on the end of each of those cars; that he made no effort to put his hand on a hand hold when uncoupling the car; that he did not try to find one; and that he was reaching over the drawhead to turn the angle cocks with his left hand. *Page 693 
On the other hand, defendants offered evidence tending to show that after the train came to a stop it did not move, nor was any signal to move given, until after plaintiff was injured; that the only way plaintiff could have been injured was by the slack in the cars; that he would not have been injured by the slack if he had not placed his hand on the neck of the coupling, the only place between the cars in which it could have been mashed; that the cars were of standard construction and supplied with grab irons or hand holds for use and protection of employees working between the cars in coupling and uncoupling cars.
These issues were submitted to and answered by the jury as follows:
"1. Was the plaintiff injured by the negligence of the defendants, as alleged in the complaint? Answer: `Yes.'
"2. Did the plaintiff, by his own negligence, contribute to his injuries, as alleged in the answer? Answer: `Yes.'
"3. Did the plaintiff voluntarily assume the risk of injury, as alleged in the answer? Answer: `No.'
"4. What damage, if any, is the plaintiff entitled to recover? Answer: `$8,000.00.'
"5. Were defendants and plaintiff at the time of his injury engaged in interstate commerce? Answer: `Yes.'"
From judgment in favor of plaintiff, upon the verdict rendered, defendants appeal to Supreme Court and assign error.
All parties to this action concede that plaintiff must recover, if at all, under the provisions of the Federal Employers' Liability Act (45 U.S.C.A., sections 51-59) as interpreted by the Supreme Court of the United States. This was the theory of the trial in the Superior Court.
Defendants, appellants, in the main, challenge the status of plaintiff as an employee. The question in this respect is raised by motions, aptly made, for judgment on the pleadings, and for judgment as of nonsuit at the close of all the evidence, and by exception to the charge of the court on the trial below. Here is the question: Where a young man, who is only nineteen years of age, knowing that a railroad company, which is engaged in interstate commerce, has a rule that "minors must not be employed in train . . . service," and in applying to such company for, and for the purpose of obtaining employment as a trainman, represents that he is twenty-one years of age, and, upon examination by its authorized representative, he is found to be "physically and mentally fit to do the work" of a trainman, and is employed as such, and, after *Page 694 
working for several months, and, while in the performance of the duties imposed upon him in that capacity on a freight train engaged in interstate commerce, is injured through the negligence of employees of the company, is he an employee within the meaning of the Federal Employers' Liability Act? If so, may he maintain an action to recover for his injury? The trial judge ruled as a matter of law that plaintiff was such an employee and may maintain this action.
Defendants, however, contend that this ruling is in conflict with the decisions of the Supreme Court of the United States in the case ofMinneapolis St. P. S. M. Ry Co. v. Rock (1929), 279 U.S. 410,49 S.Ct., 363, 73 L.Ed., 766.
While in that case the Court held that the plaintiff, an imposter, was not an employee and could not maintain the action, the case is clearly distinguishable from that at bar.
We are of opinion that the ruling below is consonant with the clear weight of authority. Although the fact that an employee obtains employment by means of false statements may be ground for rescission of the contract of employment, it is insufficient to render such contract void or to terminate the relation of master and servant, or employer and employee thereby created. 39 C. J., 276, M. S., 40.
Though not heretofore considered by this Court, this principle, in different aspects, including that of misrepresenting the age of the applicant for employment, not only has been applied by the courts of several states, but has been applied and approved by the courts of the United States. Pertinent cases tried under the Federal Employers' Liability Act are these: Payne v. Daugherty (1922), C.C.A., 8th Circuit, 283 Fed. Rep., 353 (misrepresenting prior employment and previous injuries);Minneapolis, St. P. S. Ste. M. R. R. Co. v. Borum (1932), 286 U.S. 447,52 S.Ct., 612, 76 L.Ed., 1218 (misrepresenting age); Dawson v. Texas P.Ry. Co. (1931, Court of Civil Appeals of Texas), 45 S.W.2d 367, reversed April, 1934, by Supreme Court of Texas, 123 Tex. 191
[123 Tex. 191], 70 S.W.2d 392, from which petition to Supreme Court of United States for writ of certiorari was denied October, 1934. 55 S.Ct., 110, 293 U.S. 580, 79 L.Ed., 677 (a switchman made false statement as to previous injury while employed by another railroad company); Texas N. O. R. Co. v. Webster (1932 Court of Civil Appeals of Texas), 53 S.W.2d 656, reversed April, 1934, by Supreme Court of Texas, 123 Tex. 197
[123 Tex. 197], 70 S.W.2d 394, from which petition to Supreme Court of United States for writ of certiorari was denied October, 1934, and rehearing denied November, 1934, 293 U.S. 58,79 L.Ed., 677 (plaintiff withheld information that he had employed attorneys to sue and had filed suit against former railroad employer); Kansas City, M. O. Ry. Co. of Texas v. Estes (1918), C. Cir. App. of Texas, *Page 695 203 S.W. 1155; Qualls v. A. T. St. Ry. Co. (1931), Dist. Ct. of Appeals, Third District, California, 296 P. 645 (misrepresented length of time he worked for his brother). See, also, these cases in which the Federal Employers' Liability Act was not involved; Williams v. IllinoisCentral R. R. Co. (1905), 114 La. 13, 30 So. 992 (a minor employed as brakeman falsely stated age); Matlock v. Williamsonville, G. St. L. Ry.Co. (1906), Mo., 95 S.W. 849 (a minor employed as brakeman misrepresented age); Galveston, H. S. A. Ry Co. v. Harris (1908), 48 Tex. C. Civ. App., 434, 107 S.W. 108 (falsely stated never had any litigation with any railroad); Lupher v. The Atchison, T. S. F. Ry. Co. (1910), 81 Kan. 585,106 P. 284, 25 L.R.A. (N.S.), 707 (minor falsely stating age); Hart v.The New York Central Hudson River R. R. Co., 205 N.Y. 317,98 N.E. 493 (misrepresenting age).
In the Borum case, supra, the Supreme Court of United States, distinguishing that from the Rock case, supra, said that "Plaintiff's physical condition was not shown to be such as to make his employment inconsistent with the defendant's proper policy or its reasonable rules to insure discharge of its duty to select fit employees."
In Payne v. Daugherty, supra, the Circuit Court of Appeals, 8th Circuit, through Cotteral, District J., speaking to ruling of the trial court in excluding evidence offered to defeat the action on the ground that the plaintiff fraudulently secured his employment, as pleaded, and in refusing instructions tendering such defense, said: "In our opinion the rulings are correct. The complaint is not that proof is incompetent which tended to attribute the fall from the car to prior injury or affliction. That is far different from permitting a retroactive dissolution of the relation of master and servant, by virtue of the contract, which even if voidable, was, while it subsisted, attended with the duty, required by law, for the safety of the latter . . . We regard the decisions such as Lupher v. Atchison, T. S. F. Ry. Co., 81 Kan. 585, 106 P. 284, 25 A.L.R. (N.S.), 707, as declaring the sound and just rule, namely, that there is liability to the employee, notwithstanding the inducement to the contract. Furthermore, this action was brought under the Federal Employers' Liability Law . . . And in our opinion we should hold that the defense urged was not available, in view of the positive terms of Sections 1 and 5 of the . . . Act," citing authorities.
In the Lupher case, supra, a rule of defendant railway company forbade the employment of minors in capacity of brakemen. In 1904 plaintiff entered the service of defendant as brakeman. At that time he was eighteen years of age, but represented that he was twenty-one, and obtained his position by that misrepresentation. In 1906, while throwing a switch, he slipped and fell upon the tracks and was run over and injured. He sued the company alleging that his injury was due to its *Page 696 
negligence. His evidence disclosed these facts. The trial court sustained demurrer thereto, basing its decision, it is said, upon the case Norfolk W. Ry. Co. v. Bondurant, 107 Va. 515, 59 S.E. 1091, upon the ground that his misrepresentation in securing his employment prevented the establishment of the relation of master and servant, and that at the time of his injury he was either a trespasser or at most a mere licensee, to whom the company owed no other duty than not to injure him willfully or wantonly. In reversing the decision of the lower court, the Supreme Court of Kansas epitomized in the syllabus its decision in this language: "The fact that a brakeman obtained his position by falsely stating that he was of full age when he was in fact but eighteen years old (a rule of the company forbidding the employment of minors in that capacity) does not relieve the company from its obligation to exercise the same care for his protection that is due to any other employee, or disentitle him to recover for an injury due to the want of such care and not occasioned by his minority or immaturity."
In the Williams case, supra, the first headnote correctly interpreting the decision, reads: "When a young man was employed as a brakeman on a sworn application, in which he stated that he was 21 years old, he at the time having the physique of a man, his minority is no factor in an action for damages for personal injuries."
In the Hart case, supra, the Court of Appeals of New York said: "The appellant proposed to show that, in the written application made by him (plaintiff), he falsely represented that he was over twenty-one years of age and, having obtained his position by the false representation, that his rights were only those of a licensee. The trial court committed no error in excluding the evidence, as constituting no defense. The misrepresentation of the deceased affected the contract of employment, in the sense, that it made it voidable; but it did not affect the relation of master and servant, with respect to the former's obligation under the statute respecting the safety of the person serving it. Notwithstanding that the deceased, by his misrepresentation, evaded the rule of the defendant forbidding the employment of minors, he was, actually, in its service and, therefore, was entitled to the protection of an employee accorded by the law," citing among others the Lupher case, supra.
The case of Dawson v. Texas P. Ry. Co., supra, as well as the case ofTexas N. O. Ry. Co. v. Webster, supra, was decided in the Court of Civil Appeals of Texas under authority of the Rock case, supra. But the Supreme Court of Texas, in reversing the decision of the Court of Civil Appeals in the Dawson case, supra, has this to say: "It is clearly established as a fact, that at the time Dawson applied for employment to defendant he was in every way physically fit to perform the duties of his employment, and had performed such duties for a period of twelve *Page 697 
years in a satisfactory manner before his injury, and that there was no causal connection with his injury and the false statements in his application, and that his injury was in no way related to said false statements. The fact that he concealed his employment by the Texas Midland Railroad Co., and concealed that he had been injured while in its service, and had filed a suit against it, if seasonably applied, might have been a ground for cancelling his contract of employment with defendant in error, but would be insufficient to render it void or to terminate the relation of master and servant. 39 C. J., 276, sec. 401. As such employee, and while in the full discharge of his duties, he could not be deprived of the protection of the law or of his right to recover for unlawful or negligent injuries inflicted upon him." Then, after quoting from the Harris and Estescases, supra, in the latter of which the Harris, Hart and Lupher cases,supra, are cited, and after citing others, among which are Qualls, Borum
and Lupher cases, supra, the Court continued: "The conclusion reached by the Supreme Court of the United States in the Rock case appeals to reason and justice. . . . Joe Rock made application for employment as a switchman in the yards of the Minneapolis, etc., Ry. Co. He underwent a physical examination at the hand of the Company's surgeon, and was found to be in exceedingly bad physical condition, and for that reason was rejected. He then applied under another name, and secured another man, who was well and strong, to stand the examination. He went to work under the assumed name, and was injured. The Supreme Court of the United States held that Joe Rock never became an employee of the railway company; that his gross fraud was a continuing act; that at no time was he entitled to the protection or benefits of the Federal Employers' Liability Act, and could not recover thereunder. It did not hold that where the applicant made a false statement about a matter disconnected from or not associated with his employment, and which was in no wise connected with the cause of his injury and not related to his fitness or his ability to discharge the duties required of him, he could not recover under the Federal Employers' Liability Act (45 U.S.C.A., 51-59). That it did not intend to so hold we think is made reasonably clear in the opinion written by the same eminent jurist in the case ofMinneapolis, etc., Ry. Co. v. Borum, 286 U.S. 447, 52 S.Ct., 612,76 L.Ed., 1218." And, concluding, the Court said: "Dawson was an employee of defendant in error within the meaning of the Federal Employers' Liability Act at the time he was injured. It was conclusively shown that he was physically and mentally sound, thoroughly competent to perform the duties required of him by defendant in error . . ."
In the Webster case, supra, it is said: "When Webster was employed by the Galveston, Harrisburg San Antonio Railway Company, . . . *Page 698 
in 1916, the physical examination of him showed him to be physically fit. There was no untrue statement which affected the physical fitness of Webster to hold his position with the company, and it is assumed his physical condition was the same when he became an employee of plaintiff in error. At least it was not shown that his physical condition was such as to make his employment inconsistent with plaintiff in error's proper policy or its reasonable rules to insure discharge of its duty to select fit employees. Applicable here is the language used in the case of Minneapolis,etc., Ry. Co. v. Borum . . . by the Supreme Court of the United States: `It is clear that the facts found, when taken in connection with those shown by uncontradicted evidence, are not sufficient to bring this case within the rule applied in Minneapolis, etc., Ry. Co. v. Rock . . . supra, or the reasons upon which that decision rests.'"
In both the Dawson and Webster cases, supra, petitions for certiorari
were denied by the Supreme Court of the United States, and in the latter case a rehearing was also denied.
In the present case, although plaintiff John Grant Laughter obtained employment by defendants by falsely representing that he was twenty-one years of age, when in fact he was then only nineteen, and although defendants had a rule that minors must not be employed in train service, and would not have employed plaintiff if they had known that he was a minor, defendants, finding him to be "physically and mentally fit to do the work," actually employed him as a trainman. This constitutes a contract of employment, even though voidable, by which the relation of master and servant, or employer and employee, was created between defendants and plaintiff. Hence, in the light of applicable principles enunciated in the authorities to which reference is hereinbefore made, defendants, so long as that relation subsisted, owed to plaintiff the duty to exercise the same degree of care for his protection that is due to any other employees under the provisions of the Federal Employers' Liability Act.
Moreover, while it is true that the jury has found that plaintiff, by his own negligence, contributed to his injury, there is no averment by defendants nor is there evidence that such negligence was attributable to his minority. The defendants in pleading contributory negligence aver: "That, if the plaintiff was injured as alleged in the complaint, which is again expressly denied, such injury was the result of his own negligence in going between the cars of the defendants' train and in placing his arm and hand in the position in which it was placed at the time of his injury, and in failing to exercise the care of an ordinarily prudent person under the circumstances."
The defense relating to misrepresentations by the plaintiff is summarized in paragraph 16 of defendants' further answer in this manner: *Page 699 
"16. That plaintiff, having procured his alleged employment by fraud, the relation of master and servant under the Federal Employers' Liability Act did not in fact exist, and plaintiff was not an employee of the defendants, Receivers, in contemplation of said Act, and plaintiff is not entitled to recover in this action."
Therefore, the fact that plaintiff was guilty of contributory negligence standing alone is not sufficient to raise an inference that his minority was a proximate cause of his injury.
The cases of Norfolk W. Ry. Co. v. Bondurant, supra, and Fort Worth D.C. Ry. Co. v. Griffith (1930), Court of Civil Appeals of Texas,27 S.W.2d 351, cited by defendants, are distinguishable from the present case.
As an additional ground for motion for judgment as of nonsuit, defendants contend that the evidence of negligence is not sufficient to take the case to the jury. Tested by the Federal Rule, as stated in Westernand Atlantic Railroad Co. v. Hughes, 278 U.S. 496, 73 L.Ed., 473, that to carry the case to the jury "more than a scintilla of evidence" must be offered, we are of opinion that evidence of plaintiff is sufficient. SeeHubbard v. R. R., 203 N.C. 675, 166 S.E. 802.
The charge of the court relating to assumption of risk, to which exceptions 25, 26 and 27 are taken, is in substantial accord with the provisions of section 4 of the Federal Employers' Liability Act as interpreted in decision of the courts of the United States. The exceptions are not sustained. See Cobia v. R. R., 188 N.C. 487, 125 S.E. 18, andHubbard v. R. R., supra, for review of authorities.
Defendants further except to the charge on the issue of damage, exceptions 28 to 34, inclusive. We are of opinion that the charge as given conforms substantially with the provisions of section 3 of the Federal Employers' Liability Act, relating to recovery of damages for physical injuries where both negligence and contributory negligence have been found by the jury, as interpreted and applied by the Supreme Court of the United States. See S. A. L. Ry. Co. v. Tilghman, 35 S.Ct., 653, 237 U.S. 499,59 L.Ed., 1069, and cases cited therein. See, also, Cobia v. R. R., supra. It is contended, however, that portions of the charge to which these exceptions are taken are conflicting. We are of opinion that the charge on this phase of the case, when read as a whole, is intelligible and free from the vice charged.
After giving due consideration to all other exceptions, we find no cause for disturbing the judgment of the trial court.
No error. *Page 700