813 F.2d 986
 1987 A.M.C. 1890, 22 Fed. R. Evid. Serv. 1297
 Yahya M.A. OMAR, Plaintiff-Appellee,
v.
SEA-LAND SERVICE, INC., a foreign corporation, and the M/V
ENDURANCE, Defendants-Appellants.
Yahya M.A. OMAR, Plaintiff-Appellant,
v.
SEA-LAND SERVICE, INC., a corporation, and the M/V
ENDURANCE, Defendants- Appellees.
 Nos. 85-4241, 85-4300.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 3, 1987.
Decided March 27, 1987.
 
 Thomas M. Geisness, Seattle, Wash., for plaintiff-appellee.
 Vincent R. Larson, Rodney L. Brown, Jr., Seattle, Wash., for defendants-appellants.
 Appeal from the United States District Court for the Western District of Washington.
 Before GOODWIN, SCHROEDER and FARRIS, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Sea-Land appeals from a jury verdict for Yahya Omar, plaintiff in a personal injury suit arising from a fall on board one of Sea-Land's ships. Omar's suit included claims for maintenance and cure under general maritime law, for negligence under the Jones Act, and for breach of the warranty of seaworthiness. Sea-Land argues that Omar's use of fraudulent papers in obtaining employment bars him from receiving maritime remedies related to that employment. Sea-Land also challenges several aspects of the trial procedure. We affirm.
 
 BACKGROUND
 
 2
 In April 1983, Sea-Land hired Yahya Omar to work as a messman on the S/S Endurance, which Sea-Land owned and operated. In August 1983, Omar slipped and fell on the wet or greasy floor of the ship's pantry. Although he had previously observed the condition of the floor, he neither cleaned it nor complained to anyone. He was hospitalized in Hong Kong for treatment of his injuries and later returned to Seattle for further treatment. In January 1984, Omar filed suit against Sea-Land and the Endurance for maintenance and cure under the general maritime law, for personal injury damages under the Jones Act, 46 U.S.C. Sec. 688, and for breach of Sea-Land's duty to provide a seaworthy vessel.
 
 
 3
 In November 1984, in an administrative action separate from Omar's personal injury suit, the U.S. Coast Guard tried Omar for misconduct. Omar was accused of having fraudulently obtained an "Able-Bodied Seaman" endorsement on his merchant seaman's papers. After a full hearing, the Coast Guard found Omar guilty, revoked the ABS endorsement, suspended his seaman's papers for 30 days, and placed him on probation for one year.
 
 
 4
 When Sea-Land learned, in discovery, about Omar's misconduct, it moved for summary judgment in the personal injury action. Sea-Land argued that Omar's use of fraudulent papers rendered his employment contract illegal and fraudulent, barring him from remedies under maritime law. The trial court denied this motion, ruling as a matter of law that Omar was a seaman and an employee of Sea-Land. At trial, the court admitted evidence that Omar had been found guilty of misconduct, but excluded any evidence showing that that misconduct was linked to Omar's employment with Sea-Land. The trial court specifically refused Sea-Land's request to admit the text of the Coast Guard's decision.
 
 
 5
 The jury found Sea-Land and the vessel liable for damages, plus maintenance and cure. It found Omar negligent, but found that his negligence did not proximately cause the accident. This appeal followed.
 
 DISCUSSION
 
 6
 1. Omar's Use of Fraudulent Papers in Obtaining Employment
 
 
 7
 The court ruled before trial that, as a matter of law, Omar was a "seaman" and an "employee" of Sea-Land "in the ordinary meaning of those terms" at the time of the alleged injury. Sea-Land appeals this ruling. It argues that Omar's use of seaman's papers with a fraudulent Able-Bodied Seaman endorsement voided his employment contract. Therefore, Sea-Land contends, Omar was not an "employee" on Sea-Land's vessel and not entitled to the strict liability standards and remedies available to maritime employees under the Jones Act and the general maritime law. Omar's fraud voided the consensual basis for hiring him, Sea-Land contends, so the warranty of seaworthiness does not extend to him. Sea-Land also argues that whether Omar was an "employee" of Sea-Land involved matters of fact that should have gone to the jury.
 
 
 8
 A. The trial court properly ruled on this issue.
 
 
 9
 Under both the Jones Act and the general maritime law, status as a "seaman" depends on three factors: "(1) the vessel on which the claimant was employed must be in navigation; (2) the claimant must have a more or less permanent connection with the vessel; and (3) the claimant must be aboard primarily to aid in navigation." Estate of Wenzel v. Seaward Marine Services, Inc., 709 F.2d 1326, 1327 (9th Cir.1983); see also Desper v. Starved Rock Ferry Co., 342 U.S. 187, 190-91, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952). Harbor workers and stevedores are not seamen, but all members of a ship's ocean-going crew are seamen, including cooks, hairdressers, and telephone operators. See M. Norris, The Law of Seamen Sec. 2:10 (4th ed. 1985).
 
 
 10
 Whether a plaintiff is a seaman is typically a question properly put to a jury, "if there is an evidentiary basis for making a finding." See M. Norris Sec. 30:8 at 353. There is an "evidentiary basis" for determining a plaintiff's status as a seaman when, for example, parties dispute whether the ship was in navigation or whether the employee was actually a member of the ship's crew. See, e.g., Estate of Wenzel, 709 F.2d at 1327. Where, as here, Omar's status as a seaman allegedly depended on the validity of his employment contract, there was a legal rather than an evidentiary basis to the finding. It was appropriate for the trial judge to make this finding.
 
 
 11
 Whether an "employer-employee relationship" exists is also usually a question of fact that should go to the jury, "if there is an evidentiary basis for its consideration." See M. Norris Sec. 30:14 at 369. Usually the evidentiary question is whether a particular defendant was the seaman's employer. See, e.g., Stephenson v. Star-Kist Caribe, Inc., 598 F.2d 676 (1st Cir.1979). To support its claim that this question should have gone to the jury, Sea-Land cites The Norland, 101 F.2d 967 (9th Cir.1939), which held that a jury should decide whether the plaintiff was an employee of or joint venturer with the defendant. In dispute were contract terms for allocating profits and losses, facts regarding control of the ship, and facts regarding provision of supplies for the ship. See id. at 971-73. In Omar's case, no facts relating to his employment with Sea-Land were in dispute when Sea-Land moved for summary judgment. Omar conceded that he had obtained employment with Sea-Land with papers containing the fraudulent ABS endorsement. Sea-Land conceded that Omar's legitimate papers and actual qualifications met the requirements of the job for which he was hired. In dispute was the legal significance of those facts. Because there was no "evidentiary basis" for deciding whether Omar was an "employee," the trial court ruled on a legal question properly within its purview.
 
 
 12
 B. Omar was an "employee" under the Jones Act and under maritime law.
 
 
 13
 Jones Act cases follow cases under the Federal Employers Liability Act. See, e.g., Evich v. Connelly, 759 F.2d 1432, 1433 (9th Cir.1985). In support of its argument that Omar's fraud voided his employment contract for Jones Act purposes, Sea-Land cites a FELA case from 1928. Minneapolis, St. Paul & S.S.M. Ry. v. Rock, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766 (1929), barred a railway worker from suing under FELA because of his fraudulently having someone else take his pre-employment physical exam. But Still v. Norfolk & Western Ry., 368 U.S. 35, 82 S.Ct. 148, 7 L.Ed.2d 103 (1961), limited Rock to its facts and held that the terms "employed" and "employee" in the Act must be "interpreted according to their ordinary meaning." Id. at 45, 82 S.Ct. at 154. Still concluded that "the status of employees who become such through other kinds of fraud, although possibly subject to termination through rescission of the contract of employment, must be recognized for purposes of suits under the Act." Id. (emphasis added). Even if Sea-Land could properly have fired Omar for having obtained employment with false papers, it cannot avoid his Jones Act suit.
 
 
 14
 We have held in a Jones Act case that "Still compels a holding that a person ... who is a 'seaman' and suffers injury in the course of his 'employment' as a seaman, within the ordinary meaning of those words, is not barred from suit under the Jones Act because he conceals a material fact in applying for employment." Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 530 (9th Cir.1962). Omar did not even conceal a material fact. He did not need the Able-Bodied Seaman's endorsement for the messman's job that he performed on the Endurance. His proper papers qualified him for that job.
 
 
 15
 Maintenance and cure, the remedy Omar sought and won under the general maritime law, derives from a seaman's employment on a vessel, but it is not a narrowly contractual right. Although sometimes described as an "implied contractual obligation," M. Norris Sec. 26:10 at 25, it cannot be waived by contract. G. Gilmore & C. Black, The Law of Admiralty 287 (2d ed. 1975). Historically and logically, the shipmaster's obligation "derives from a seaman's dependence on his ship, not from his individual deserts." Farrell v. United States 336 U.S. 511, 515-16, 69 S.Ct. 707, 709-10, 93 L.Ed. 850 (1949). It is an obligation "so inclusive as to be relatively simple, and can be understood and administered without technical considerations." Id. at 516, 69 S.Ct. at 709-10. The exception to the shipowner's obligation is when the seaman's injury or illness results from his own willful misbehavior. See Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).
 
 
 16
 Fraud of the sort Omar practiced does not constitute "willful misbehavior." Fraud may bar maintenance and cure where a seaman conceals a medical condition that he knows or should know is related to the illness or injury for which maintenance and cure are requested. See Sammon v. Central Gulf Steamship Corp., 442 F.2d 1028, 1029 (2d Cir.), cert. denied, 404 U.S. 881, 92 S.Ct. 202, 30 L.Ed.2d 162 (1971); Tawada v. United States, 162 F.2d 615, 617 (9th Cir.1947) (barring maintenance and cure for seaman who claimed to be fit when hired, concealing that he had tuberculosis). Omar's fraud in obtaining the Able-Bodied Seaman endorsement was unrelated to his injury and does not bar maintenance and cure.
 
 
 17
 Sea-Land also argues that Omar's employment contract was void because it was "illegal." Tampering with seaman's documents can be a felony. 18 U.S.C. Sec. 2197. Although this statute was the "guide" appropriately used by the Coast Guard to judge Omar guilty of misconduct, that proceeding was administrative, and Omar certainly cannot be held to have been found guilty of a felony. Sea-Land argues further that hiring Omar with his faulty papers violated 46 U.S.C. Sec. 8701. This may not be true, since Omar's papers were valid to the extent that they "authorize[d] service in the capacity for which [he was] engaged." 46 U.S.C. Sec. 8701(b). Moreover, the penalty for an individual sailor's violation of this statute is civil, not criminal.
 
 
 18
 In any case, Sea-Land's argument based on illegality fails for the same reason that its argument based on Omar's fraud fails. The remedial nature of the Jones Act and maritime law requires a less technical, contractual definition of "employee" than Sea-Land asks us to use. The duties of maritime employers are owed not to perfect contracts, but to imperfect sailors. Substantial evidence supports the ruling that Omar was an "employee" of Sea-Land as that term is ordinarily understood, and that he was in service to the S/S Endurance at the time of his accident.
 
 2. Evidentiary Matters
 A. The Coast Guard Decision
 
 19
 Sea-Land contends that the trial court abused its discretion in excluding the Coast Guard's report of misconduct in Omar's obtaining the ABS endorsement. The trial court admitted facts regarding misconduct, but excluded the report on the theory that it would be more prejudicial than probative. We review the court's decision for abuse of discretion. Coursen v. A.H. Robins Co., 764 F.2d 1329, 1333 (9th Cir.1985).
 
 
 20
 Sea-Land cross-examined Omar about his false application for the Able-Bodied Seaman's endorsement. The following facts came out: Omar knowingly submitted false information to receive the ABS endorsement; the Coast Guard found Omar guilty of misconduct and made this finding a part of his official record as a seaman; the Coast Guard suspended Omar's papers for 30 days and put him on probation. Sea-Land argues that the report was necessary to impeach Omar's testimony before the jury and to determine the amount of his lost wages.
 
 
 21
 We find no abuse of discretion. Omar did make excuses at trial, claiming that he had not known he was doing wrong in obtaining the false ABS endorsement. But he also admitted on cross-examination that the Coast Guard had found him guilty of knowingly making the false application. The conflict between his admission and his excuse was before the jury. It was not error for the court to conclude that the extensive text of the Coast Guard's report would have been more prejudicial than probative on the issue of Omar's credibility.
 
 
 22
 Sea-Land also argues that the Coast Guard report should have been admitted as relevant to the amount of wages Omar lost after his injury. Before trial, Sea-Land argued that the Coast Guard's records would be available to potential employers and would hurt Omar's chances for employment. Some of his wage loss after the accident should therefore be attributed to his misconduct rather than to the accident. That Omar could not sail for the 30 days of his suspension did come out at trial. That Omar was on probation for his misconduct also came out. The jury could infer that Omar's employability might be reduced as a result. Cross-examination and oral argument were sufficient vehicles for highlighting that evidence. We find no abuse of discretion.
 
 B. Dr. Mosiman's testimony
 
 23
 Dr. Roscoe Mosiman testified as to the cause of Omar's medical problems. Although he had examined Omar, he could not diagnose exactly the cause of his symptoms. His primary hypothesis was that Omar suffered from the aftereffects of an injury sustained in the shipboard accident. His second hypothesis was that Omar's difficulties might be psychological. Sea-Land contends that this lack of certainty should have barred Dr. Mosiman's testimony as a matter of law. We review for abuse of discretion. Taylor v. Burlington Northern R.R., 787 F.2d 1309, 1315 (9th Cir.1986).
 
 
 24
 Speculative and hypothetical medical testimony is admissible in Jones Act suits. See Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 109, 80 S.Ct. 173, 175, 4 L.Ed.2d 142 (1959). Sentilles held that a jury could properly infer that a shipboard accident caused the plaintiff's illness even where no medical witness could offer conclusive evidence. Id. The jury was aware of the hypothetical nature of Dr. Mosiman's testimony, hearing both his primary and secondary hypotheses. Other medical evidence was offered. We find no abuse of discretion.
 
 
 25
 3. Sea-Land's Counterclaims for Fraud and Breach of Contract
 
 
 26
 The pretrial ruling that Sea-Land could not raise Omar's fraud as a defense had the effect of dismissing Sea-Land's counterclaim for fraud and breach of contract. Sea-Land contends that this sua sponte dismissal was error and that the court should at least have given Sea-Land notice and an opportunity to oppose the dismissal. We review this question of law de novo. Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986).
 
 
 27
 We find no error in the pretrial ruling. A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). See Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir.1981) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1357 at 593 (1969)). Such a dismissal may be made without notice where the claimant cannot possibly win relief. See Wong v. Bell at 362. Sea-Land's defense to both the Jones Act negligence claim and to the claim for maintenance and cure was that Omar was not an "employee" because his employment contract had been voided by his fraud. Sea-Land's counterclaim for fraud and breach of contract relied precisely on the same theory. Sea-Land's own motion for summary judgment provided adequate notice and an opportunity to litigate this issue. After hearing all the facts regarding Omar's fraud and his obtaining employment with Sea-Land, the court ruled that Omar was an "employee" under the Jones Act. If Sea-Land wanted to sue Omar for breach of contract, its action could not be under the Jones Act. The court did not err in dismissing the counterclaim.
 
 
 28
 4. The Jury's Answers to the Special Verdict
 
 
 29
 On review, the Court of Appeals must uphold a jury verdict unless it is impossible "under a fair reading" to harmonize the answers. Monsma v. Central Mutual Ins. Co., 392 F.2d 49, 54-55 (9th Cir.1968). Sea-Land contends that two of the jury's answers to the special verdict cannot be harmonized. One of the questions asked: "Was Mr. Omar himself negligent?" The jury answered "yes." The next question asked: "If so, was that negligence a legal cause of injury and damage to Mr. Omar?" The jury answered "no."
 
 
 30
 These answers can be harmonized. The jury heard considerable evidence about Omar's duty, along with others in the steward's department, to clean the floor on which he slipped. Further, the jury could have found Omar negligent in not watching his step or not getting proper medical care. Others shared the duty to clean the floor. The jury could have concluded that his own negligence was not the cause of the floor's being slippery when he fell. See Chesapeake & Ohio Ry. v. Barnaby, 414 F.2d 309 (6th Cir.1969) (upholding jury's findings that party was negligent and that his negligence was not the proximate cause of injuries).
 
 
 31
 AFFIRMED.